**WELLESLEY HILLS REALTY TRUST, Plaintiff,**

v.

**MOBIL OIL CORPORATION, Defendant.**

Civ. A. No. 90–10840.

United States District Court, D. Massachusetts.

Sept. 4, 1990.

William W. Erickson, William A. DeVasher, Jr., Kellogg, Gardner & George, Wellesley, Mass., for plaintiff.

Robert M. Gault, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This action involves a dispute over liability for the contamination of real property located in Wellesley, Massachusetts (the "site") now owned by the plaintiff, Wellesley Hills Realty Trust ("WHRT"), and formerly owned by the defendant, Mobil Oil Corporation ("Mobil"). The plaintiff has alleged that Mobil contaminated the property by releasing oil and hazardous materials during its ownership from August 21, 1926 to January 29, 1987 when it operated a gasoline service station on the property. In its complaint, WHRT has asserted eight claims allegedly arising from this contamination. Mobil has moved to dismiss each of these claims on various grounds, and this action is now before the Court on the Mobil's motion to dismiss.

The essential facts alleged in the complaint are as follows. Mobil owned the site and operated a gas station on the site from 1926 to 1987. During this period, Mobil stored oil and other materials, classified as hazardous, which were released onto the property. On January 30, 1987, Mobil sold the property to Harold Alexander. In April, 1987, Alexander entered into a Purchase and Sale Agreement relating to the site with William Roberts, who later became WHRT's trustee. Pursuant to the Purchase and Sale Agreement, Alexander requested an environmental assessment of the site. The results, received prior to the closing, revealed severe contamination of the site by "benzene, toluene, ethylbenzene and xylene, all of which are components of gasoline." Despite these results, WHRT proceeded with the closing on June 7, 1988.

In its eight-count complaint, WHRT has alleged that Mobil is liable for the contamination of the site under various theories of

recovery. Count I alleges a claim under Mass.G.L. ch. 21E, the Massachusetts Oil and Hazardous Material Release Prevention and Response Act. Count II asserts a claim for nuisance. Count III states a claim for trespass. Counts IV, V, and VI assert claims for negligence, negligent supervision, and strict liability. Count VII seeks a declaratory judgment that the defendant is legally responsible for the contamination and is liable for the costs of cleanup. Count VIII alleges a claim under G.L. ch. 93A ("chapter 93A") for unfair and deceptive trade practices allegedly engaged in by the defendant.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Mobil has moved to dismiss all of these claims on the ground that the alleged facts fail to state any claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(6). The standard for evaluating the sufficiency of a complaint on a 12(b)(6) motion is whether the plaintiff can prove any set of facts that would entitle it to relief on its claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Nader v. Citron,* 372 Mass. 96, 97–98, 360 N.E.2d 870 (1977). A claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102. Moreover, for purposes of a motion to dismiss, the allegations of the complaint and any inferences that may be drawn from them are to be accepted as true. *Nader,* 372 Mass. at 98, 360 N.E.2d 870.

## I.

In Count I of the complaint, WHRT has asserted a claim under the Massachusetts Oil and Hazardous Material Release Prevention and Response Act ("Chapter 21E"). Mass.G.L. ch. 21E. WHRT claims that Mobil "caused or is legally responsible for" releases of oil and hazardous materials at the site and as such is liable to WHRT for the damage to the property, including assessment costs, containment and removal costs, diminution of the value of the site, and restriction on its ability to obtain financing and develop the site.

Chapter 21E is the Massachusetts equivalent to the federal superfund statute, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Chapter 21E was enacted "to clarify and improve the commonwealth's capability for responding to releases of oil and hazardous material and to recover response costs from persons responsible for releases for which it has incurred such costs." *Nassr v. Commonwealth,* 394 Mass. 767, 773–74, 477 N.E.2d 987 (1985) (quoting St. 1983, c. 7, emergency preamble). Chapter 21E authorizes the Department of Environmental Protection to take such response actions, including assessment, containment and removal, as it reasonably deems necessary whenever it has reason to believe that oil or hazardous waste has been released. Mass.G.L. ch. 21E, § 4. Chapter 21E also creates a private right of action: "Any person who undertakes assessment, containment, or removal action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such assessment, containment and removal." G.L. ch. 21E, § 4.

Section 5(a) of Chapter 21E identifies five categories of persons who are liable for response costs under Chapter 21E. Section 5(a) provides in relevant part:

Persons liable               .

(a) Except as otherwise provided in this section, (1) the owner or operator of a vessel or a site from or at which there is or has been a release or threat of release of oil or hazardous material; (2) any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material; ... (5) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault, (i) to the commonwealth

for all costs of assessment, containment, and removal incurred pursuant to section four and section eight relative to such release or threat of release, ... (iii) to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release.

Section 5(a) makes a notable distinction between liability for releases of hazardous material and liability for releases of oil. Subsection (1) makes present owners of property where there has been a release of hazardous material or oil liable, regardless of whether the release occurred during their ownership or not. Thus, present owners of property contaminated by either hazardous material or oil are liable solely by reason of their ownership.

Subsection (2), however, applies only to contamination by hazardous material and makes past owners of property contaminated by hazardous material liable if the release occurred during their period of ownership. Thus, past owners of property contaminated by hazardous material who owned the property when the release occurred are liable solely by reason of their ownership. In contrast, past owners of property contaminated by oil are not included in subsection (2) and thus are not liable solely by reason of their ownership during the period when a release of oil occurred. Rather, something more than mere ownership is required to make a past owner of oil contaminated property liable.

Under chapter 21E, a past owner of oil contaminated property would only be liable if he or she came within the purview of subsection (5) which makes "any person who otherwise caused or is legally responsible for a release of ... oil ... liable, ..." Thus, if a past owner of oil contaminated property "caused" a release of oil, he or she would be liable under subsection (5). The party's ownership of the property, however, would be coincidental to, and not the basis of the liability. The fact that the party caused the release would provide the basis of liability.

WHRT relies on section 5(a)(5) to establish Mobil's liability for contaminating the property. WHRT alleges that Mobil "caused or is legally responsible for the release of oil" at the site and that it has suffered damage to its real property as a result of such release.[1] Mobil has moved for dismissal of this claim, arguing that WHRT has failed to allege facts sufficient to establish that Mobil "caused" or "is legally responsible" for the release, an essential element of WHRT's claim under ch. 21E, § 5(a)(5).[2] Contending that WHRT has simply parroted the statute, Mobil argues that WHRT's allegation that Mobil caused the release is wholly conclusory and unsupported by any factual allegations. See *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514–15 (1st Cir.1988); *Hobson v. McLean Hospital Corp.*, 402 Mass. 413, 417, 522 N.E.2d 975 (1988).

In support of its argument, Mobil relies on the unreported decision of the Massa-

---

**1.** WHRT also contends that Mobil may be liable under § 5(a)(2). WHRT states that the environmental assessment indicated that Mobil may have operated an underground "waste oil" storage tank when it owned the property. Although "oil" is not identified in § 5(a)(2), WHRT points out that "waste oil" is specifically excluded from the definition of "oil" in ch. 21E, § 2, and is therefore a "hazardous material" to which § 5(a)(2) applies. Moreover, WHRT also contends that the assessment indicated that Mobil maintained an underground storage tank with unknown contents which may prove to be hazardous material within the meaning of § 5(a)(2).

Despite its contention that Mobil may be liable under § 5(a)(2), however, WHRT has alleged none of these facts in its complaint. Thus, as it now reads, the complaint does not

state a claim under § 5(a)(2). This Court, however, will allow WHRT to amend its complaint to include such factual allegations. Of course, any such amendment must comport with the good faith pleading requirements of Rule 11. Fed.R.Civ.P. 11.

**2.** Originally, Mobil also moved for dismissal of the chapter 21E claim on the ground that it was time barred under the analogous statute of limitations for tort actions. However, in light of the United States District Court's decision in *Hays v. Mobil Oil Corp.* in which the court held that the statute of limitations applicable to a chapter 21E action does not begin to run until liability for the cleanup of the site is fixed, Mobil has withdrawn this argument for dismissal. 736 F.Supp. 387, 396–97 (D.Mass.1990).

chusetts Superior Court in *Marenghi v. Barton and Mobil Oil Corp.* In *Marenghi*, the plaintiffs were the present owners of property once owned by Mobil and upon which Mobil had operated a gas station. The *Marenghi* plaintiffs brought suit against Mobil under Chapter 21E, § 5(a)(5), alleging that Mobil was liable for the costs of cleaning-up the property because Mobil caused the releases of oil on the property during its ownership. In ruling on Mobil's motion to dismiss under Rule 12(b)(6), the superior court ruled that "[o]wnership of a site does not necessarily make an entity 'legally responsible' for contamination; indeed, the clear implication of § 5(a)(2) is that past owners of a site from which there has been a release of oil are *not* legally responsible solely by virtue of their status as owners." The superior court also rejected the plaintiffs' contention that Mobil caused the oil leak within the meaning of § 5(a)(5). The superior court held that the plaintiffs' allegation that Mobil caused the leak was merely a recitation of section 5(a)(5) and nothing more than a legal conclusion which was unsupported by any factual allegations other than Mobil's ownership of the site. Thus, the superior court gave the plaintiffs an opportunity to amend the complaint to allege facts supporting the conclusion that Mobil caused the leak of oil, but ruled that it would dismiss the complaint if an amendment could not be made. Mobil urges this Court to follow the decision of the superior court in *Marenghi*, arguing that WHRT, like the plaintiffs in *Marenghi*, relies solely on Mobil's ownership to establish that Mobil caused the release.

█ Although federal courts should attribute some weight to the decisions of lower state courts, such decisions are " 'not controlling' where the highest court of the state has not spoken on the point." *Commissioner v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (quoting *King v. Order of Travelers*, 333 U.S. 153, 160–61, 68 S.Ct. 488, 492–93, 92 L.Ed. 608 (1948)). A federal court may even disregard a decision by an intermediate appellate state court if "it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Commissioner*, 387 U.S. at 465, 87 S.Ct. at 1782 (quoting *West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)). Notably, the Massachusetts Supreme Judicial Court has not yet ruled on any issues related to "causation" or "legal responsibility" under Chapter 21E, § 5(a)(5). Thus, although this court may attribute some weight to the *Marenghi* decision, it is not controlling.

While this Court agrees with the superior court in *Marenghi* that more than the mere allegation of ownership is required to support the conclusion that a party "otherwise caused or is legally responsible for" a release of oil, this Court is troubled by the *Marenghi* decision because the superior court ignored other allegations in the complaint which supported the causation element under § 5(a)(5). In its opinion, the *Marenghi* court states: "The Marenghis' complaint alleges that the defendant Mobil Oil Corporation (Mobil) owned an underground oil tank at a gas station in Malden (the gas station). The complaint further alleges that this tank sprang a leak in 1977, and that Mobil repaired the tank without cleaning up the surrounding soil." As is evident, the Marenghis not only alleged that Mobil owned the site, but that it stored oil in an underground tank, that this tank sprang a leak, and that Mobil did not clean up the spillage. These factual allegations, which the court states are made in the complaint, all support the allegation that Mobil "caused" the release of oil. Because the court ignored these allegations, its ruling that the allegation that Mobil caused the oil spill was conclusory and simply a recitation of the statute is erroneous. This Court is convinced that the Massachusetts Supreme Judicial Court would decide that the factual allegations of the complaint in *Marenghi* were sufficient to allege causation under Chapter 21E, § 5(a)(5). Accordingly, this Court does not give any weight to the superior court's decision in *Marenghi*.

Arguing that the allegations of the complaint are sufficient to state the causation element, WHRT also relies on a Massachu-

setts superior court decision, *Topkins v. Charter Oil Co.* In *Topkins*, the superior court held that the allegations in the complaint were sufficient to state a claim under § 5(a)(5) and survive a motion to dismiss where the complaint alleged that a successor company succeeded to the liability of its predecessor, that its predecessor had operated an oil storage and handling facility on the site, and that the site contamination resulted from the activities of the predecessor company. The court also ruled that the complaint was sufficient to state a claim under § 5(a)(5) against a former owner of the property who had licensed the site to the predecessor company which conducted the oil storage and handling facility, despite the fact that the complaint did not specifically allege that releases of oil occurred during the licensor's period of ownership. In the instant case, unlike in *Topkins*, the plaintiff has alleged that the releases of oil occurred during Mobil's period of ownership. Thus, more reason exists in this case than in *Topkins* to warrant a finding that the complaint sufficiently states causation. Yet, again, while this Court should attribute some weight to the *Topkins* decision, it is not controlling.

■ Nevertheless, Mobil attempts to convince this Court that Mobil's ownership of the site is the only factual allegation which WHRT makes in the complaint to support its allegation that Mobil caused releases of oil on the site. WHRT not only alleged that Mobil owned the site, however, but that it owned the site continuously for a period of sixty years, that it operated a gas station on the property for those sixty years, that it stored oil on the property, and that releases of oil occurred during that time. Contrary to Mobil's argument, these allegations amount to much more than an allegation that Mobil caused the release of oil solely by reason of its ownership. These allegations and the inferences to be drawn from them are more than sufficient to support an allegation of causation and to state a claim under § 5(a)(5). Accordingly, Mobil's motion to dismiss the chapter 21E claim in Count I should be denied.

## II.

■ In Count II, WHRT has asserted a claim for continuing nuisance. WHRT alleges that Mobil's releases of oil and hazardous materials at the site have caused damage to the property and have significantly impaired WHRT's use and enjoyment of the site, thus constituting a nuisance. Mobil argues that WHRT's nuisance claim should be dismissed because under prevailing Massachusetts law, WHRT has failed to state a claim for private nuisance. *See Asiala v. Fitchburg*, 24 Mass.App.Ct. 13, 17, 505 N.E.2d 575 (1987); *Sheehy v. Lipton Industries, Inc.*, 24 Mass.App.Ct. 188, 191–92, 507 N.E.2d 781, *further rev. denied*, 400 Mass. 1103, 509 N.E.2d 1202 (1987).

The law of private nuisance has historically involved conflicts between neighboring, contemporaneous land uses. *See Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 314, n. 9 (3d Cir.1985), *cert. denied*, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). Under Massachusetts law, "[a] private nuisance claim is actionable when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment *of the property of another.*" *Asiala*, 24 Mass.App.Ct. at 17, 505 N.E.2d 575 (emphasis added). *See also Sheehy*, 24 Mass.App.Ct. at 191, 507 N.E.2d 781. In the instant case, Mobil's contamination of its own property did not and does not interfere with the use and enjoyment of the property of another. Rather, Mobil created a condition on its own property, and WHRT, the vendee of that property, now claims that the contamination interferes with its use of that property.

Because the law of private nuisance requires that the interference be to persons outside the land upon which the condition is maintained, the Massachusetts Court of Appeals has held that a vendee of land does not have a private nuisance action against a vendor for its contamination of

the property prior to the sale.[3] *Sheehy*, 24 Mass.App.Ct. at 191–192, 507 N.E.2d 781. *See also Philadelphia*, 762 F.2d at 312–315 (dismissing a nuisance action by a landowner against a predecessor in title for hazardous material buried on the land). Accordingly, WHRT does not have a claim for private nuisance against Mobil, and Count II should be dismissed.

### III.

■ Count III of the complaint asserts that Mobil's releases of oil and hazardous materials at the site constitute a trespass. A trespass, however, requires an unprivileged, intentional intrusion on land in the *possession of another. New England Box Co. v. C & R Const. Co.*, 313 Mass. 696, 707, 49 N.E.2d 121 (1943); Restatement (Second) Torts § 158. In this case, Mobil owned and was in possession of the property when it allegedly released the oil causing the contamination. Thus, Mobil's releases of oil were not unprivileged, and Mobil clearly was not intruding on land in the possession of another. Mobil's releases of oil on its own land, therefore, cannot constitute a trespass.

WHRT argues, however, that Restatement Second Torts § 161(1) supports its claim for continuing trespass against Mobil. Section 161(1) provides: "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously place there, whether or not the actor has the ability to remove it." Restatement (Second) Torts § 161(1). "The word tortious is used throughout the Restatement ... to denote the fact that conduct whether of act or omission is of such character as to subject the actor to liability under the principles of the law of torts." Restatement (Second) Torts § 6.

■ WHRT alleges that Mobil tortiously placed the oil on the land and thus committed a trespass within the meaning of § 161(1). However, WHRT has failed to state any facts or allege any claims that would support the conclusion that Mobil's releases of oil on its property were "tortious," that is, would subject Mobil to liability under the law of torts.[4] Although Mobil may be liable under Chapter 21E for the releases of oil, a violation of Chapter 21E is not a tort, and a private Chapter 21E action is not an action in tort. Accordingly, WHRT has failed to state a claim for trespass against Mobil, and its Count III trespass claim should be dismissed.

### IV.

■ In Count IV of its complaint, WHRT has asserted a negligence claim against Mobil. In support of this claim, WHRT alleged that "Mobil had a duty to ensure that there were no releases of oil or hazardous material at the site." In Count V of the complaint, which asserts a claim for negligent supervision, WHRT alleged that "Mobil had a duty to supervise its employees to ensure that there were no releases of oil or hazardous material at the site." In each of these counts, WHRT further alleged that Mobil breached these duties by allowing releases of oil and hazardous material, and thus caused damage to WHRT and its property. Moving for dismissal of WHRT's negligence and negligent supervision claims, Mobil contends that it owed no duty to WHRT, a subsequent owner of the property, to ensure against contamination of the property or to supervise its employees to ensure against such contamination.

It is settled that "in order to maintain an action for an injury to person or property

---

3. This Court notes that persons outside the land, such as neighboring landowners, whose use and enjoyment of their property is affected by a condition maintained on a vendee's property which was created by the vendor would have an action against the vendor. In this case, however, WHRT does not claim that the contamination has caused or is causing any harm to others outside the land, and more importantly, WHRT would not have standing to complain about such interference with another's interest in property.

4. In its complaint WHRT asserted five tort claims against Mobil: nuisance, trespass, negligence, negligent supervision, and strict liability. As this Court now concludes, however, these claims should all be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

by reason of negligence or want of due care, there must be shown to exist some obligation or duty *towards the plaintiff,* which the defendant has left undischarged or unfulfilled." *Mounsey v. Ellard,* 363 Mass. 693, 696, 297 N.E.2d 43 (1973) (quoting *Sweeney v. Old Colony & Newport R.R.,* 10 Allen 368, 372) (emphasis added). The issue of whether, given the relationship between the defendant and the plaintiff, the law imposes a duty of reasonable conduct upon the defendant for the benefit of the plaintiff is an issue of law for the court to determine. Prosser and Keeton, Law of Torts, § 45 at 320 (5th ed. 1984); *see Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99 (1928).

The law imposes various duties on the owners and occupiers of land. For example, a landowner owes a duty of reasonable care to invitees on his or her land to use reasonable care to maintain the land in a safe condition. *See Mounsey,* 363 Mass. at 696, 297 N.E.2d 43 (quoting *Sweeney,* 10 Allen at 372–374). Additionally, a landowner owes duties to surrounding landowners both to manage his or her property with reasonable care so as not to cause damage to their property, and not to create or maintain a condition on his or her land which would interfere with the use and enjoyment of their land.

This Court, however, is aware of no legal authority which would support the imposition of a duty on an owner of land to maintain his or her property in a certain condition or to refrain from any activity affecting the property which would extend to future owners of the land. The imposition of such a duty would be unreasonable because such future owners may not be known or even contemplated at the time the landowner creates or maintains a condition on his or her property. Moreover, such a duty would unreasonably interfere with a landowner's right of ownership; the

right to do with his or her property as desired without liability so long as he or she does not interfere with the interests of others. Thus, this Court concludes, as a matter of law, that Mobil did not owe a duty to WHRT to ensure or to supervise its employees to ensure that there were no releases of oil or hazardous material on the property while Mobil owned and possessed the property.

Additionally, as recognized in Prosser and Keeton on Torts,

> [a] vendor of real property who parts with title, possession and control of it ceases to be either an owner or occupier. Ordinarily, therefore, he is permitted to step out of the picture and shift all responsibility for the condition of the land to the purchaser.... In the absence of express agreement or misrepresentation, the purchaser is expected to make his own examination and draw his own conclusion as to the condition of the land; and the vendor is, in general, not liable for any harm resulting to [the vendee] or others from any defects existing at the time of transfer.

Prosser, § 64 at 446–47. Courts have recognized two exceptions to this once universal rule, one for the benefit of persons on the land and one for persons outside.[5] Prosser, § 64 at 447. Under the first exception for the benefit of persons on the land, a vendor is under a duty to a vendee to disclose any hidden defects which he knows or should know would create an unreasonable risk of harm to persons on the premises. If the vendor fails in this duty, he or she would be liable for any resulting harm to the vendee or others upon the land. Prosser, § 64 at 447.

■■■ This exception to the general rule of nonliability for vendors does not apply in this case. First, the relationship between Mobil and WHRT is not one of vendor and vendee. Mobil did not sell the property to

---

5. The second exception, for the benefit of those outside the land, involves the situation where the condition of the land poses an unreasonable risk of harm to those outside the premises. Prosser, § 64 at 448. In such a case, the vendor remains liable, at least for a reasonable time after the sale, to the same extent as he or she

would have been had he or she remained in possession of the premises. *Id.* Because WHRT only claims harm as the owner of the property and does not allege any harm to persons outside the premises, this second exception does not even possibly apply.

WHRT, but to Alexander. Alexander then sold the property to WHRT. Second, even assuming that WHRT could plead facts to support a vendor-vendee relationship between Mobil and WHRT, WHRT has not alleged that Mobil had a duty to disclose conditions on the land which created an unreasonable risk of harm, that Mobil breached such a duty, or even that the contamination of the property was a condition which posed an unreasonable risk of harm either to persons on the land or those outside of it. Most importantly, any attempt by WHRT to state a claim under this exception would ultimately fail because the undisputed facts are that an environmental assessment was conducted prior to the sale and that WHRT therefore knew of the contaminated condition of the property when the sale was consummated. Accordingly, this case clearly calls for application of the traditional rule that the vendor is not liable for the condition of the land and that the purchaser, responsible for examining the land itself, accepts the property as it is.

Accordingly, for the foregoing reasons, WHRT has failed to state a negligence claim or a negligent supervision claim, and Counts IV and V should therefore be dismissed.[6]

### V.

In Count VI of the complaint, WHRT has alleged that Mobil's operation of a gasoline service station at the site constituted an abnormally dangerous activity, and that Mobil is thus strictly liable for damage to the property and WHRT resulting from such activity. The doctrine of strict liability for the operation of abnormally dangerous activities was first enunciated in the English case of *Rylands v. Fletcher.* "The rule of law" which emerged from the *Rylands* case "is, that the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes must keep it at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape." *Clark–Aiken Co. v. Cromwell–Wright Co., Inc.,* 367 Mass. 70, 74, 323 N.E.2d 876 (1975) (quoting *Rylands v. Fletcher,* L.R. 1 Ex. 265, 279 (1866)). The Massachusetts courts have adopted the *Rylands* rule of strict liability. This doctrine, as formulated in Massachusetts cases, is in accord with the rule as stated in the Restatement (Second) Torts which provides: "One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) Torts, § 519, *quoted in Clark–Aiken,* 367 Mass. at 89, 323 N.E.2d 876. "This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." *Id.*

WHRT argues that the operation of a gas station is an abnormally dangerous activity because of the high degree of risk that release of oil and hazardous materials will occur. WHRT further argues that it suffered harm as a result of Mobil's operation of a gas station on the property and that Mobil should be strictly liable for such harm. The nature of the harm claimed by WHRT is damage to the property and clean-up costs.

For the purposes of this motion, this Court accepts WHRT's allegations that Mobil's operation of the gas station qualifies as an abnormally dangerous activity, that the risk of release of oil is precisely what makes operation of a gas station abnormally dangerous, and that such contamination of property constitutes harm to the property. Despite these allegations, however, WHRT has still failed to state a claim for strict liability. As is evident from the Re-

---

**6.** This court recognizes that the Massachusetts superior court in *Topkins v. Charter Oil Company* denied a motion to dismiss a negligence claim by a subsequent owner of a site against a prior owner who had released oil onto the site during the operation of an oil storage and handling facility. As previously stated, however, this Court is not bound by the decision of a state trial court where the highest court of the state has not decided the issue and particularly where this court believes, as in this case, that the highest court of the state would decide the issue otherwise. *Commissioner,* 387 U.S. at 465, 87 S.Ct. at 1782 (1967).

statement's statement of the rule of strict liability, the harm for which an actor who conducts an abnormally dangerous activity will be strictly liable is harm to the person or property *of another*. The original articulation of the rule in *Rylands* anticipated that such harm would be caused by the "escape" of the danger from the actor's land. Of course, as the rule developed, courts applied it to situations which did not involve an "escape" from the land. For example, an individual who conducts an abnormally dangerous activity will be strictly liable to persons who come on the land for injury to their person. Despite the expansion of the rule, however, harm to the property or person *of another* has always been required. It would be nonsensical to even formulate a rule that an actor is strictly liable for harm inflicted on his or her own property or person. Nevertheless, WHRT indirectly asks this court to formulate such a rule.

At the time Mobil operated the gas station and releases of oil inflicted harm to the property, Mobil owned the property. Thus, Mobil's operation of the gas station caused harm to property *of its own*, not property *of another*. The site became property of WHRT only after the contamination, the harm, had occurred. No matter how viewed, therefore, Mobil can not be accused of having caused harm to the property of another because of releases of oil on its own property resulting from its operation of a gas station. Significantly, moreover, WHRT knew of the harm when it accepted the property at the sale, and thus can be said to have assumed the risk. Accordingly, WHRT has failed to state a claim for strict liability against Mobil, and Count VI should be dismissed.

## VI.

■ In Count VII of the complaint, WHRT seeks a declaratory judgment that Mobil caused or is legally responsible for the releases of oil and hazardous materials at the site and is thus liable under G.L. c. 21E for all costs incurred in connection with any assessment, containment, and removal actions taken at the site, including any costs of monitoring the site. Jurisdiction of this Court to award declaratory relief exists only in a case of actual controversy. 28 U.S.C. § 2201. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). A case is ripe where the essential facts establishing the right to declaratory relief have already occurred. *See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 242, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); *Riehl v. Travelers Insurance Co.*, 772 F.2d 19, 22 (3d Cir. 1985).

The essential fact establishing WHRT's right to declaratory relief is the alleged fact that Mobil released oil and hazardous material at the site when Mobil owned and operated a gas station on the site. This alleged release of oil and hazardous materials by Mobil has already occurred. Thus, this Court is satisfied that an actual controversy between Mobil and WHRT exists in this case and that WHRT's claim for declaratory relief is ripe. The fact that the Commonwealth has not yet taken any enforcement action against WHRT does not render the controversy between WHRT remote and hypothetical. *Cf. Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir.1986). Accordingly, Mobil's motion to dismiss WHRT's claim for declaratory relief should be denied.

## VII.

■ In Count VIII of the complaint, WHRT asserts that Mobil engaged in unfair competition and unfair acts or practices in violation of G.L. ch. 93A. "In Massachusetts the litmus test for transgression of chapter 93A involves behavior which falls within 'the penumbra of some ... established concept of unfairness,' and is sufficiently 'unethical or unscrupulous' to be actionable under the statute." *Gooley*, 851 F.2d at 516 (quoting *PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass.

593, 596, 321 N.E.2d 915 (1975); *Wasserman v. Agnastopoulos*, 22 Mass.App.Ct. 672, 679, 497 N.E.2d 19 (1986)). Despite its conclusory allegation parroting the language of chapter 93A, WHRT has not alleged any facts showing that Mobil was in any way unfair, unethical or unscrupulous or otherwise supporting the conclusion that Mobil has engaged in unfair acts or practices. As the court emphasized in *Gooley* when it ruled that the chapter 93A action in that case was pleaded in a conclusory fashion, "[t]here is no allegation, say, that Mobil had actual knowledge that the site was contaminated and embarked on a coverup." *Gooley*, 851 F.2d at 515. *Compare Sheehy*, 24 Mass.App.Ct. at 195, 507 N.E.2d 781 (to recover under chapter 93A for nondisclosure, plaintiff must show defendant knew property was contaminated; it is an obvious principle that someone should not be liable [under chapter 93A] for not disclosing what he does not know). Accordingly, WHRT's Count VIII chapter 93A claim must be dismissed for failing to state a claim under which relief can be granted. Fed.R.Civ.P. 12(b)(6).

Order accordingly.