**GRAHAM OIL COMPANY, Plaintiff,**

v.

**BP OIL COMPANY, Defendant.**

Civ. A. No. 94–607.

United States District Court,
W.D. Pennsylvania.

Sept. 1, 1994.

Marshall J. Tindall, Robert W. Thomson, Neva L. Stotler, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, for plaintiff.

James V. Corbilli, D. Matthew Jameson, III, Joseph K. Reinhart, Babst, Calland, Clements & Zomnir, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the Court is defendant's motion to dismiss a portion of Counts I and II of plaintiff's amended complaint, and all of Counts III, VI, IX, X, XI, and XII of plaintiff's amended complaint. For the reasons stated in this opinion, the Court will deny defendant's motion to dismiss a portion of Counts I and II, and deny defendant's motion to dismiss Counts III, VI, IX and X. The Court will grant defendant's motion to dismiss Counts XI and XII of plaintiff's amended complaint.

### I. Background

This action arises out of a dispute between plaintiff, Graham Oil Company (Graham), and defendant, BP Oil Company (BP). On or about April 13, 1994, Graham filed an amended complaint asserting twelve causes of action relating to alleged damage to its property caused by defendant.

Graham owns the property located at Midland Avenue and Tenth Street in the Borough of Midland, Beaver County, Pennsylvania. On April 25, 1966, Graham leased this property to Boron Oil Company (Boron) for a lease term beginning June 1, 1966 and ending November 30, 1968. Boron exercised its option to extend the lease term three times. On August 1, 1983, the lease was amended by a Lease Amendment signed by Graham and BP, Boron's successor. Subsequently, BP exercised its option to extend the lease term two times. At all times during the lease, the property was used as a gasoline station and service center.

On January 27, 1992, BP had three 10,000 gallon underground storage tanks removed from the leased premises. On February 4, 1992, BP notified Graham that it was not going to renew the lease, and would allow the lease to expire on November 30, 1992.

As required by Pennsylvania law, BP submitted a "Closure Report" to the Department of Environmental Regulations (DER) when it removed the three underground storage tanks from service. The Closure Report, dated July 28, 1992, revealed contamination to the subsurface of Graham's property in the form of benzene, toluene, ethylbenzene, xylene, chlorobenzene, 1.2 dichlorobenzene, 1.3 dichlorobenzene, 1.4 dichlorobenzene, and petroleum waste.

Subsequent to July 28, 1992, Graham obtained a copy of the Closure Report. Prior to July 28, 1992, however, Graham alleges that it did not have any knowledge of any contamination of its property.

Graham has alleged in its amended complaint that:

> [b]y causing or allowing petroleum products, hazardous substances, and other

wastes, to be released as a result of its underground storage tank operations and other activities, BP has contaminated the Leased Premises, diminished the value of the Leased Premises, caused Graham to lose the use of the Leased Premises, and disrupted Graham's contractual relationships.

(Plaintiff's amended complaint at ¶ 23).

Count I of Graham's amended complaint asserts a claim under the Federal Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6987 (1976) (as amended) (RCRA). BP has moved to dismiss a portion of Count I on the basis that RCRA does not allow a private cause of action for damages.

Count II of the amended complaint asserts a claim under the Pennsylvania Hazardous Sites Cleanup Act, 35 Pa.C.S.A. §§ 6020.101–1305 (1988) (HSCA). BP has moved to dismiss a portion of Count II on the basis that HSCA does not allow for a private cause of action for money damages.

Count III of the amended complaint asserts a claim under the Pennsylvania Storage Tank and Spill Prevention Act, 35 Pa.S.A. §§ 6021.101–2104 (1989) (Pa. Tank Act). BP has moved to dismiss Count III on the basis that Graham failed to provide the requisite notice before initiating this action. Alternatively, BP has moved to dismiss a portion of Count III on the basis that the Pa. Tank Act does not allow for a private cause of action for damages.

Count IV of the amended complaint accuses BP of breaching an implied covenant to quit and surrender in good condition while Count V accuses BP of committing waste. BP has not moved to dismiss either of these counts.

Count VI of the amended complaint asserts a claim of strict liability based on the common law doctrine of ultrahazardous activity. BP has moved to dismiss Count VI on the basis that the operation of a gasoline station is commonplace, and that it is, therefore, not ultrahazardous as a matter of law.

Count VII of the amended complaint asserts a state law claim for negligence, and Count VIII asserts a state law claim for negligent interference with business. BP has not moved to dismiss either of these counts.

Count IX of the amended complaint asserts a state law claim for public nuisance. BP has moved to dismiss Count IX on the basis that Graham has not alleged that it has suffered any damage in the exercise of a right common to the general public.

Count X of the amended complaint asserts a state law claim for private nuisance. BP has moved to dismiss Count X on the basis that the doctrine of private nuisance applies only to adjoining land owners, and not to landlord-tenant relations.

Count XI of the amended complaint asserts a state law claim for trespass and/or continuing trespass. BP has moved to dismiss Count XI on the basis that it was legally in possession of the leased property when it was allegedly contaminated, and there was, therefore, no unprivileged, intentional intrusion onto land in the possession of another. BP further contends that Graham cannot maintain an action for continuing trespass because the alleged contamination constitutes a permanent injury and not a continuing trespass.

Count XII of the amended complaint asserts a common law claim for indemnification. BP has moved to dismiss Count XII on the basis that such a claim is not yet ripe for adjudication.

After summarizing the appropriate standard of review, the Court will address each of defendant's arguments in turn.

## II. Discussion

### A. Standard for motion to dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all facts alleged by the plaintiff in the complaint as well as any reasonable inferences that can be drawn from those facts. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). Legal conclusions are not admitted as true in a motion to dismiss. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). When no relief can be granted under any set of facts that could be proved,

dismissal under Rule 12(b)(6) is appropriate. *Markowitz,* 906 F.2d at 103.

### B. Motion to dismiss a portion of Count I: RCRA

Section 7002(a) of the Solid Waste Disposal Act, 42 U.S.C. § 6972, provides that a citizen may maintain an action against any person "who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any soil or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B) (the RCRA citizen suit provision). Section 7002 allows the Court to award the following relief when a citizen brings a complaint pursuant to the RCRA:

> The district court shall have jurisdiction ... to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste ..., to order such person to take other such action as may be necessary ..., [or] to apply any appropriate civil penalties.

42 U.S.C. § 6972(a). Section 7002 further allows the Court to award "costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party whenever the court determines such an award is appropriate." 42 U.S.C. § 6972(e).

Although defendant cites numerous cases supporting the principle that the RCRA citizen suit provision does not permit a private action for damages, it is not necessary to reach that issue. In this case, Graham is not using its RCRA claim as an opportunity to assert a private action for damages. Rather, Graham is seeking only the relief authorized by RCRA's citizen suit provision. The prayer for relief in Count I of the amended complaint itemizes the relief available by RCRA's citizen suit provision, and BP's argument that the relief requested is outside the scope of relief allowed under RCRA is, therefore, mooted. For this reason, the Court will deny BP's motion to dismiss a portion of Count I of the amended complaint.

### C. Motion to dismiss a portion of Count II: HSCA

Section 6020.1115 of HSCA provides that:

> [a] person who has experienced or is threatened with personal injury or property damage as a result of a release of a hazardous substance may file a civil action against any person to prevent or abate a violation of this act or any order, regulation, standard or approval issued under this act.

35 Pa.S.A. § 6020.1115(a) (the HSCA citizen suit provision).

In addition to allowing citizens to seek injunctive relief, the HSCA citizen suit provision further provides that:

> [t]he court may grant any equitable relief; may impose a civil penalty ... and may award litigation costs, including reasonable attorney and witness fees, to the prevailing or substantially prevailing party whenever the court determines such an award is appropriate.

35 Pa.S.A. § 6020.1115(b).

The law in Pennsylvania is unsettled with regard to the types of relief available to a plaintiff under the HSCA citizen suit provision. Because the Court finds that Graham is not asserting a private action for damages under the HSCA, but is rather only seeking the relief authorized by the HSCA citizen suit provision, the Court need not determine whether or not the HSCA prohibits a private cause of action. Thus, the Court will deny BP's motion to dismiss a portion of Count II of the amended complaint.

### D. Motion to dismiss Count III: Pa. Tank Act

The purpose of the Pa. Tank Act is to regulate the use of aboveground and underground storage tanks in the Commonwealth of Pennsylvania. *See* 35 Pa.S.A. § 6021.102. Section 6021.1305(c) of the Pa. Tank Act allows any person to commence a civil action to compel compliance with the Act or any rule or regulation promulgated pursuant to the Act. Specifically, § 6021.1305(c) provides that:

Any person having an interest which is or may be affected may commence a civil action on his behalf to compel compliance with this act or any rule, regulation, order, or permit issued pursuant to this act by any owner, operator, landowner or occupier alleged to be in violation of any provision of this act or any rule, regulation, order, or permit issued pursuant to this act.

35 Pa.S.A. § 6021.1305(c).

In addition to providing citizens with the right to seek injunctive relief, § 6021.1305 further provides that:

[t]he court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

35 Pa.S.A. § 6021.1305(f).

BP contends that Graham's claim under the Pa. Tank Act should be dismissed because "[n]o action pursuant to subsection (c) [the private action provision] may be commenced prior to 60 days after the plaintiff has given notice, in writing, of the violations to the department and to any alleged violator." 35 Pa.S.A. § 6021.1305(d). BP contends that Graham's amended complaint fails to allege that the requisite notice was provided to the DER.

Section 6021.1305(e) provides that the 60–day notice provisions of subsection (d) can be waived when the violation or order complained of constitutes an imminent threat to the health or safety of the plaintiff or would immediately affect a legal interest of the plaintiff. In such a case, any action pursuant to the Pa. Tank Act may be initiated immediately upon written notification to the DER. 35 Pa.S.A. § 6021.1305(e).

■ In its amended complaint, Graham has alleged that the contamination caused by BP constitutes an imminent threat to human health and safety. (Amended complaint at ¶ 31). Graham has also alleged facts that tend to show that its legal interest in the property has been immediately affected. *Id.* at ¶ 23. The fact that Graham is the owner of the contaminated property may be enough

in and of itself to show that Graham's legal interests have been immediately affected. For these reasons, the Court finds that the 60–day notice requirements of § 6021.1305(d) have been waived, and that Graham was permitted to initiate this action immediately upon written notification of the violation to the DER. Section 6021.1305(e) does not specify that the written notification be given by the plaintiff, as is required under subsection (d). In this case, the requisite notice of the violation was given to the DER when BP submitted its Closure Report to the Department on July 28, 1992.

BP has alternatively moved to dismiss a portion of Count III of the amended complaint on the basis that the Pa. Tank Act does not allow for a private cause of action for damages. In this case, Graham is not attempting to use its Pa. Tank Act claim as an opportunity to assert a private action for damages. Rather, Graham is seeking only the relief authorized by the Pa. Tank Act. *See* 35 Pa.S.A. §§ 6021.1305(c) and 6021.1305(f). The prayer for relief in Count III of the amended complaint itemizes the relief available under the Pa. Tank Act, and BP's argument that the relief requested is outside the scope of relief allowed under the Pa. Tank Act is, therefore, mooted. For the foregoing reasons, the Court will deny BP's alternative motion to dismiss a portion of Count III of the amended complaint.

### E. Motion to dismiss Count VI: ultrahazardous activity

■ BP moves to dismiss Count VI of the amended complaint on the basis that the operation of a gasoline station does not meet the criteria for an ultrahazardous activity or "abnormally dangerous activity" under Pennsylvania law. Section 520 of the Restatement (Second) of Torts sets forth several factors to consider in determining whether an activity is "abnormally dangerous." Specifically, § 520 provides that:

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land, or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977).

The Pennsylvania Supreme Court has yet to determine whether the operation of a gasoline station qualifies as an abnormally dangerous activity. BP contends that the operation of a gasoline station does not involve an unpreventable risk, that the storage and dispensing of gasoline is a matter of common usage, that the storage and dispensing of gasoline was appropriate to its location, and that the storage and dispensing of gasoline and other petroleum products is a valuable activity to society. BP relies upon *Melso v. Sun Pipe Line Co.*, 394 Pa.Super. 578, 576 A.2d 999 (1990), *appeal denied*, 527 Pa. 667, 593 A.2d 842 (1991), to support its contention that the operation of a gasoline station is not an abnormally dangerous activity.

The Court in *Melso* held that the operation of a petroleum pipeline under a housing development was not an abnormally dangerous activity because it was a matter of common usage. *Id.* 576 A.2d at 1003. "An activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community." Restatement (Second) of Torts § 520, comment (i). The Restatement further explains this definition by way of illustration:

[w]ater collected in large quantity in a hillside reservoir in the midst of a city or in coal mining country is not the activity of any considerable portion of the population, and may therefore be regarded as abnormally dangerous; while water in a cistern or in household pipes or in a barnyard tank supplying cattle, although it may involve much the same danger of escape, differing only in degree if at all, still is a matter of common usage and therefore not abnormal. *The same is true of gas and electricity in household pipes and wires, as contrasted with large storage tanks or high tension power lines.*

*Id.* (emphasis added).

While "the transmission on land of natural gas and petroleum products by pipeline ... is a common activity," *Melso*, 576 A.2d at 1003, it cannot be said that the dispensing of gasoline from large storage tanks is so common as to be "carried on by the great mass of mankind" or even by "many people in the community." Restatement (Second) of Torts § 520, comment (i).

BP also contends that the storage and dispensing of gasoline was appropriate for its location. It is undisputed that the gasoline station operated by BP was located in an urban area. The Restatement (Second) of Torts provides the following illustration when discussing locality as a factor to consider in determining whether a particular activity is abnormally dangerous:

[e]ven a magazine of high explosives, capable of destroying everything within a distance of a half mile, does not necessarily create an abnormal danger if it is located in the midst of a desert area, far from human habitation and all property of any considerable value. *The same is true of a large storage tank filled with some highly flammable liquid such as gasoline ....* On the other hand, the same magazine of explosives, [or] the *huge storage tank full of gasoline ... may become abnormally dangerous if they are carried on in the midst of a city.*

Restatement (Second) of Torts § 520, comment (j).

"Whether the activity is an abnormally dangerous one is to be determined by the court, upon consideration of all the relevant factors listed in this section, and the weight given to each that it merits upon the facts in evidence." Restatement (Second) of Torts § 520, comment (1).

Because the plaintiff may prove a set of facts justifying the treatment of this activity as an abnormally dangerous activity, the Court will deny BP's motion to dismiss Count VI of the amended complaint.

*F. Motion to dismiss Count IX: public nuisance*

■ The Restatement (Second) of Torts defines a public nuisance as "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B(1). Before addressing BP's arguments, the Court notes that a release which violates the provisions of the Pa. Tank Act constitutes a public nuisance. 35 Pa.S.A. § 6021.1304.

BP moves to dismiss Count IX of the amended complaint on the basis that the doctrine of public nuisance provides a cause of action to abate nuisances to the general public and not to private citizens. In furtherance of their argument, BP. contends that Graham has not alleged that it has suffered any damage in the exercise of a right common to the general public. BP relies upon *Philadelphia Electric Co. v. Hercules, Inc.,* 762 F.2d 303 (3d Cir.1985), which held that private individuals may not recover damages in an individual action for public nuisance unless they have suffered harm of a different kind from that suffered by the general public and the harm was suffered while exercising a right common to the general public. *Hercules,* 762 F.2d at 315–16. *See also* Restatement (Second) of Torts § 821C(1).

In *Hercules,* the public right interfered with was the right to pure water. *Hercules,* 762 F.2d at 316. Likewise, in the present action, the public right interfered with is the right to soil and water free of contamination. In *Hercules,* the plaintiff did not allege that it suffered a harm different from that suffered by the general public. *Id.* Rather, in that case, the Delaware River was the polluted water source and the Philadelphia Electric Company made no commercial use of the water. The plaintiff in *Hercules* was merely one of many whose dwelling or corporation was situated along the river and, therefore, it was not uniquely affected by the pollution of the river. The Court in *Hercules* decided that the plaintiff was not uniquely harmed. because it was "not a case where an established business made commercial use of the public right with which the defendant interfered." *Id.* (*quoting* Prosser, *Private Action for Public Nuisance,* 52 Va.L.Rev. 997, 1013–14 (1966)).

In the present case, Graham is uniquely affected by the alleged contamination to its property. Graham has alleged that it makes commercial use of its property and that any present or future commercial use of its property will be affected by the contamination. Specifically, Graham has alleged that the contamination has "diminished the value of the Leased Premises, caused [it] to lose the use of the Leased Premises, and disrupted [its] contractual relationships." (Amended complaint at ¶ 23).

■ Furthermore, the pecuniary loss to a plaintiff resulting from a public nuisance normally constitutes a different kind of harm from that suffered by the general public. For example, if "A pollutes public waters, killing all the fish, [and] B, who has been operating a commercial fishery in these waters, suffers pecuniary loss as a result, [then] B can recover for the public nuisance." Restatement (Second) of Torts § 821C, comment (h), illus. 11. Similarly, Graham has alleged a pecuniary loss that is not common to the entire community as a result of the contamination. (Amended complaint at ¶ 23).

Therefore, Graham has sufficiently alleged that it has suffered harm of a different kind from the general public and that the harm was suffered while exercising a right common to the general public. For this reason, the Court will deny BP's motion to dismiss Count IX of the amended complaint.

*G. Motion to dismiss Count X: private nuisance*

■ The Restatement (Second) of Torts defines a private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D; *see also Harford Penn–Cann Service, Inc. v. Zymblosky,* 378 Pa.Super. 578, 549 A.2d 208, 209 (1988). BP moves to dismiss Count X of the amended complaint on the basis that Graham was a dispossessed landlord when the alleged contamination occurred and not a neighboring landowner. BP contends that the doc-

trine of private nuisance applies only to adjoining landowners.

Section 821E of the Restatement (Second) of Torts clarifies who is entitled to bring an action for a private nuisance. Specifically, § 821E provides that:

[f]or a private nuisance there is liability only to those who have property and privileges in respect to the use and enjoyment of the land affected, including

(a) possessors of the land,

(b) owners of easements and profits in the land, and

(c) *owners of nonpossessory estates in the land that are detrimentally affected by interference with its use and enjoyment.*

Restatement (Second) of Torts § 821E (emphasis added).

While it is a general rule that the law of private nuisance is designed to resolve conflicts between neighboring landowners, *see Hercules,* 762 F.2d at 314, there are exceptions to this rule. Section 821E further clarifies when an owner of a nonpossessory estate can recover in an action for private nuisance and provides the following exception:

In most cases the owner of a nonpossessory estate in land has no rights or privileges in respect to the present use or enjoyment of the land, and therefore has no action for an interference with it. *In some cases, however, an interference with the present use or enjoyment of land has a permanent, detrimental effect on the usability of the land and thus affects the rights and privileges of the owner of the nonpossessory estate in respect to the future use and enjoyment of the land.* This is often the case when the land is in the possession of a tenant-at-will. The owner of the nonpossessory estate in this case is usually in the position of a landlord receiving rent from the tenant, and the value of the estate is definitely impaired by a permanent or continuing interference with the usability of the land.

Restatement (Second) of Torts § 821E, comment (f) (emphasis added).

BP cites to several cases to support its contention that the doctrine of private nuisance applies only to neighboring landowners. *See, e.g., Hercules,* 762 F.2d at 314; *Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1057–58 (D.N.J.1993); *Smith v. King's Grant Condominium,* 537 Pa. 51, 640 A.2d 1276, 1280 (1994). The Court of Appeals in *Hercules* reviewed several cases in which tenants attempted to recover from landlords for defective conditions existing on the premises. *Hercules,* 762 F.2d at 313–14. The Court of Appeals for the Third Circuit concluded that a tenant cannot recover from its landlord under the doctrine of public nuisance because it is not within the class of protected persons entitled to maintain an action under that theory. *Id.* at 314. By way of analogy, BP contends that Graham, as landlord, cannot recover from BP, as its tenant, under the doctrine of private nuisance.

The cases cited by BP that address landlord-tenant relations and that limit the scope of the doctrine of private nuisance all apply a "caveat emptor" analysis. For example, the Court of Appeals in *Hercules* ruled that tenants cannot recover from landlords in actions for private nuisance for defective conditions existing on the premises over which they have assumed control because to do so would "circumvent limitations on vendor liability inherent in the rule of caveat emptor." *Hercules,* 762 F.2d at 313. Similarly, the Court in *Klockner* addressed the same issue of whether a tenant can recover from a landlord in an action for private nuisance. *Klockner,* 811 F.Supp. at 1057–58.

The only case cited by either Graham or BP which addresses the question of whether a landlord can recover from a tenant in an action for public nuisance is *Arawana Mills Co. v. United Technologies Corp.,* 795 F.Supp. 1238 (D.Ct.1992). The Court in *Arawana* held that:

[t]here is nothing in the relationship between a landlord and tenant that would appear to prevent a landlord from proving each one of [the] elements [of a public nuisance] in a claim against a tenant, and certainly, tenants can be held liable for injuries to third parties caused by nuisance on leased property.

*Arawana,* 795 F.Supp. at 1250 (*citing Perkins v. Weibel,* 132 Conn. 50, 42 A.2d 360 (1945)).

The Court is persuaded that the *Arawana* analysis is more applicable to the present case than the analyses found in the cases cited by BP. Furthermore, none of the cases cited by BP address the exception to the general rule of private nuisance. *See* Restatement (Second) of Torts § 521E, comment (f). For the foregoing reasons, the Court will deny BP's motion to dismiss Count X of the amended complaint.

*H. Motion to dismiss Count XI: trespass*

▇▇▇ Under Pennsylvania law, a trespass is defined as an unprivileged, intentional intrusion upon land in possession of another. *Kopka v. Bell Telephone Co.,* 371 Pa. 444, 91 A.2d 232, 235 (1952). BP moves to dismiss Count XI on the basis that BP was a tenant-in-possession of the premises at the time of the alleged contamination and its presence was, therefore, authorized.

▇▇ In order to maintain a trespass action, a plaintiff must have had the right to exclusive use and possession of the property at issue. *Northeast Women's Center, Inc. v. McMonagle,* 670 F.Supp. 1300, 1311 (E.D.Pa. 1987). In the present case, Graham surrendered exclusive use and possession of the property when it leased the property to BP. Graham cannot, therefore, maintain an action in trespass based upon any of BP's alleged activities during the term of the lease. It is undisputed that the contamination of the property occurred during the lease term and, therefore, Graham should not be permitted to recover in its action for trespass against BP.

BP cites to several cases supporting this contention. *See Potts Run Coal Co. v. Benjamin Coal Co.,* 285 Pa.Super. 128, 426 A.2d 1175, 1178 (1981); *Gedekoh v. Peoples Natural Gas Co.,* 183 Pa.Super. 511, 133 A.2d 283, 284 (1957) (holding that no trespass occurs where a wrong is committed subsequent to a rightful entry by permission of the owner of the property). The Court in *Wellesley Hills Realty Trust v. Mobil Oil Corp.,* 747 F.Supp. 93 (D.Mass.1990), addressed a similar situation as the one involved in this case. In

*Wellesley,* the Court granted a motion to dismiss a trespass claim filed by a former gasoline service station owner who allegedly caused the release of oil and hazardous substances on the plaintiff's property while in possession of the site. *Wellesley,* 747 F.Supp. at 99.

Graham contends that it had constructive possession during the lease in that it had an ownership interest in its property and, therefore, it may bring an action in trespass against BP. The only case cited by Graham in support of this contention is *Taylor v. Kaufhold,* 368 Pa. 538, 84 A.2d 347 (1951). The Court in *Taylor* held that a dispossessed landlord could bring an action in trespass against a tenant only when he or she is a holdover tenant. *Id.* 84 A.2d at 351. The Court reasoned that, in a case involving a holdover tenant, the tenant is actually committing a trespass because he or she is no longer authorized to be on the premises. *Id.* 84 A.2d at 350–51. In contrast, when BP allegedly contaminated the leased property, it was lawfully authorized to be in possession of the premises.

▇▇▇ In addition to asserting a trespass claim based upon the act of contamination, Graham has also alleged that BP's actions constitute a continuing trespass on the property. In its amended complaint, Graham alleges that "[b]y causing or allowing releases of hazardous substances and other pollutants to contaminate the Leased Premises, BP interfered with, *and continues to interfere with,* Graham's possessory interest in the land." (Amended complaint at ¶ 74) (emphasis added). BP moves to dismiss Count XI of the amended complaint on the basis that the alleged contamination of the property constitutes a permanent injury rather than a continuing trespass.

Pennsylvania courts have adopted the sections of the Restatement (Second) of Torts that deal with continuing trespass and permanent injury. *Mancia v. Department of Transportation,* 102 Pa.Cmwlth. 279, 517 A.2d 1381, 1384 (1986); *County of Allegheny v. Merrit Construction Co., Inc.,* 309 Pa.Super. 1, 454 A.2d 1051 (1982). The Restate-

ment (Second) of Torts defines a continuing trespass as follows:

> *Continuing trespass.* The actor's failure to remove from land in the possession of another a structure, chattel, or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land and ... confers on the possessor of the land an option to maintain a succession of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as aggravation of the original trespass.

Restatement (Second) of Torts § 161, comment (b).

The Restatement (Second) of Torts also distinguishes a continuing trespass from a permanent injury as follows:

> *Effect of a permanent change in the condition of the land.* A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land. Thus, if one, without a privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation, or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since his conduct has once for all produced a permanent injury to the land, the possessor's right is to full redress in a single action for the trespass, and a subsequent transferee of the land, as such, acquires no cause of action for the alteration of the condition of the land.

Restatement (Second) of Torts § 162, comment (e).

The Pennsylvania Supreme Court clarified the distinction between a continuing trespass and a permanent injury in *Sustrik v. Jones and Laughlin Steel Corp.*, 413 Pa. 324, 197 A.2d 44 (1964). "[A] continuing trespass must be distinguished from a trespass that effects a permanent change in the condition of the land. [A permanent trespass], while resulting in a continuing harm, does not sub-

ject the actor to liability for a continuing trespass." *Id.* 197 A.2d at 46.

The United States District Court for the Eastern District of Pennsylvania addressed this same issue in *Tri–County Business Campus Joint Venture v. Clow Corp.*, 792 F.Supp. 984, 996 (E.D.Pa.1992). Similar to this case, *Tri–County* was a case involving environmental contamination. The waste in *Tri–County* included resin-containing drums, parts, buckets and barrels of liquid, semi-solid waste, resin blocks and gaskets. *Id.* at 987. The district court concluded that the defendant's depositing of drums and associated waste on the property did not constitute a continuing trespass because the depositing of waste was a completed act at the time that the property was conveyed. *Id.* at 996.

Applying this analysis to the present case, BP's depositing of hazardous substances on Graham's property does not constitute a continuing trespass because the contamination was a completed act at the time that Graham took possession of the property. The act of contamination was "completed" on January 27, 1992, when BP had three 10,000 gallon underground storage tanks removed from the leased premises. Because BP's lease did not expire until November 30, 1992, the act of contamination had been completed approximately ten months prior to Graham's repossession of the property.

█ Although Graham alleges in ¶ 29 of its amended complaint that BP is "continuing to release petroleum and other hazardous substances on the Leased Premises," this is a legal conclusion which need not be accepted on a motion to dismiss. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3rd Cir.1993). Graham's amended complaint does not contain any factual allegations that BP caused the release of hazardous substances at any time after January 27, 1992. In order to maintain a claim for continuing trespass, a plaintiff must plead that the defendant committed and continues to commit harm-causing actions, not merely that the harm continues to result from actions which have ceased. *See Hatco Corp. v. W.R. Grace & Co.*, 801 F.Supp. 1309, 1324 (D.N.J.1992); *PBN Associates v. Xerox Corp.*, 141 A.D.2d 807, 529 N.Y.S.2d 877

(N.Y.App.Div.1988), *order modified on reargument on other grounds,* 176 A.D.2d 861, 575 N.Y.S.2d 451 (N.Y.App.Div.1991). Drawing all reasonable inferences from the facts alleged in Graham's amended complaint, the Court concludes that the contamination was a completed act at the time the underground storage tanks were removed and that the contamination is, therefore, a permanent injury rather than a continuing trespass.

Because the Court finds that the contamination constitutes a permanent injury rather than a continuing trespass, Graham's only right to redress in trespass is in "a single action for the [original] trespass." Restatement (Second) of Torts § 162, comment (e). The alleged contamination occurred while BP was in possession of the property and, therefore, any acts committed on the property by BP during the term of its lease occurred while it was in lawful possession of the premises. Accordingly, because Graham may not maintain an action for the original trespass, the Court will grant BP's motion to dismiss Count XI of the amended complaint.

*I. Motion to dismiss Count XII: indemnification*

▮▮▮▮ BP moves to dismiss Count XII of the amended complaint on the basis that Graham has not paid damages to a third party as a result of BP's actions. Common law indemnity applies when "a person who, without active fault on his own part, has been compelled by reason of some legal obligation to pay damages occasioned by the negligence of another." *Burbage v. Boiler Engineering & Supply Co.,* 433 Pa. 319, 249 A.2d 563, 567 (1969). Under Pennsylvania law, before any right to indemnification arises, the indemnitee must pay damages to a third party. *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 122 (3d Cir.1992), *cert. denied sub nom.,* — U.S. ——, 113 S.Ct. 1645, 123 L.Ed.2d 267 (1993). Because Graham fails to allege that it has paid any damages to a third party as a result of BP's alleged negligence, the Court will grant BP's motion to dismiss Count XII of the amended complaint.