# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4024/03-1276

_____

Highland Industrial Park, Inc.,　　　　*
　　an Arkansas Corporation,　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　Appellee,　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*　Appeals from the United States
BEI Defense Systems Company,　　　　*　District Court for the Western
　　a Delaware Corporation,　　　　　*　District of Arkansas.
　　　　　　　　　　　　　　　　　　*
　　　　　　Appellant.　　　　　　　 *
　　　　　　　　　　　　　　　　　　*
------------------------------------------------- *
　　　　　　　　　　　　　　　　　　*
Arkansas Department of Environmental *
　　Quality,　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　Amicus on Behalf of Appellant.　 *

_____

Submitted:  September 8, 2003

Filed:  February 4, 2004  (Revised: 3/12/2004)

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

BEI Defense Systems Company appeals from judgments entered against it after a bench trial on Highland Industrial Park's claims for trespass, negligence, violations of the Arkansas Hazardous Waste Management Act (AHWMA), and breach of lease covenants. The district court awarded Highland $500,000 in damages and $185,000 in attorney's fees. We reverse and remand for the reasons explained below.

BEI began leasing property in Highland Industrial Park in 1966, and for twenty-three years it burned waste from its rocket component production process on a part of the leased property known as the "burn area." Soil contamination was discovered in the burn area in 1989 and corrected in 1990 with the assistance of the Arkansas Department of Pollution Control and Ecology (now the Arkansas Department of Environmental Quality (ADEQ)). In 1996, BEI informed Highland of its intention to terminate the lease the following year. Following BEI's notification of termination, in reports dated June, 1996, and January, 1997, environmental consultants reported to Highland that the burn area's groundwater was contaminated.

Highland filed this suit for environmental damages in July, 1999. When BEI moved for summary judgment, asserting that all of Highland's claims were barred by the applicable statutes of limitations, the district court denied the motion. The district court later granted Highland summary judgment with respect to one of several breach of covenant claims. Following a bench trial, the district court found BEI liable for negligence, trespass, and violations of the AHWMA.

I.

We review the district court's determinations of law *de novo*. *Koch Eng'g Co., v. Gibralter Cas. Co.*, 78 F.3d 1291, 1294 (8th Cir. 1995). Since this case is here under our diversity jurisdiction, we apply the law of Arkansas, the forum state, to

determine statute-of-limitations issues. *See Nettles v. American Telephone & Telegraph Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995). Arkansas generally considers such statutes to be procedural and applies its own statutes of limitations to cases filed in its courts, *see Middleton v. Lockhart*, 2003 WL 22969182 (Dec. 18, 2003), and therefore we apply the limitations statutes of Arkansas.

## II.

Arkansas has a three-year statute of limitations for tort claims, including those sounding in negligence and trespass. *See* Ark. Code § 16-56-105. At issue in this case is when the statute began to run. The district court held that it did not begin to run until 1997, because it was not until then that Highland knew the nature and extent of its injury.

In *Arkansas v. Diamond Lakes Oil Co.*, 347 Ark. 618, 623, 66 S.W.3d 613, 616 (2002), the Arkansas Supreme Court first asserted that "[t]he limitation period found in § 16-56-105 begins to run when there is a complete and present cause of action, and, in the absence of concealment of the wrong, when the injury occurs, not when it is discovered." The court in *Diamond Lakes*, 347 Ark. at 624-25, 66 S.W.3d at 617-18, nevertheless went on to apply what is called a "discovery rule" even though there was no active concealment of the injury, partly on the ground that the plaintiff had not known either the cause or source of his injury until less than three years before the suit was filed. The court also seems to have held that the statute did not begin to run until the plaintiff could have known the "scope of the injury," *id.*, 347 Ark. at 625, 66 S.W.3d at 618; but in the context we believe that the word "scope" was not employed in *Diamond Lakes* as a synonym for "nature and extent." We believe instead that the Arkansas Supreme Court in *Diamond Lakes* was saying that the statute does not begin to run until the plaintiff knows, or reasonably should have known, that its land had suffered a remediable injury, that is, one that was not merely technical or nominal. We therefore respectfully disagree with the district court's conclusion.

We reach this conclusion after an examination of other Arkansas cases of relevance. In *Martin v. Arthur*, 339 Ark. 149, 157, 3 S.W.3d 684, 688 (1999), for instance, the court stated that a statute of limitations begins to run when the damage occurs. In *McEntire v. Malloy*, 288 Ark. 582, 586, 707 S.W.2d 773, 776 (1986), the court held that "[o]nce a prospective plaintiff knows she has been injured by a wrongdoer her cause of action has occurred," and she can, at this point, "investigate the extent of the injury ... and present evidence of its present and probable future extent." In *Diamond Lakes* itself, moreover, the court noted that the plaintiff was arguing that the statute did not begin running until the plaintiff "could ascertain the full nature and extent of the injury," a phrase that the court assiduously avoided using when it decided the case. Our confidence in our interpretation of Arkansas case law is buttressed by the fact that we know of no state whatever in which an injured party must know the full extent of the damages that it may recover before the statute of limitations begins to run on its claim. Indeed, the cases on this issue are legion. *See*, *e.g.*, *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994) (holding that it "is a general principle of limitations law" that a "statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later").

We are clear that in this case Highland knew enough about its tort claims to cause the statute of limitations to commence running more than three years before it filed suit. It knew of the existence of ground contamination by June, 1996, at the latest, when it received the first environmental report. The report told Highland that the contaminants in its groundwater exceeded the maximum contaminant levels established by the Environmental Protection Agency as safe. In 1991, moreover, because of past soil contamination, a mortgagee refused to extend a loan on the six-acre burn area even though the contamination had been corrected. Highland was therefore on notice that soil contamination could seriously affect its property values. Thus, Highland knew more than three years before it filed its action that a cognizable

injury, something more than a technical trespass, had occurred. And since it knew by June, 1996, that BEI was the source of the contaminants, its tort actions are barred.

The district court correctly noted that the Arkansas Supreme Court has cautioned that reasonable doubts about when a statute of limitations began to run ought to be resolved in favor of allowing a claim to proceed. *See Dunlap v. McCarty,* 284 Ark. 5,7, 678 S.W.2d 361, 363 (1984). Here, however, we think that there is no reasonable doubt that the latest date that Highland became aware of the cause and source of a significant injury to its land was June, 1996.

Highland also argues that even if the injury was "discovered" in June, 1996, the statute of limitations was tolled because the contamination constituted a continuing trespass. Under a continuing trespass theory, the statute of limitations would be tolled as long as the trespass continued. In effect, therefore, if we accept Highland's argument, the statute of limitations would not begin to run in this case unless the pollution is actually removed. This makes no sense. The Arkansas Supreme Court, moreover, has stated that "the continuing-tort theory is not recognized in Arkansas." *Chalmers v. Toyota Motor Sales*, 326 Ark. 895, 906, 935 S.W.2d 258, 264 (1996). Even in the Arkansas Supreme Court's most forgiving statute-of-limitations case, *Diamond Lakes*, 347 Ark. at 623-25, 66 S.W.3d at 616-18, the statute eventually began to run; it was simply tolled until the injured party was on notice as to certain matters. The Arkansas Supreme Court did not allow the statute of limitations to be tolled indefinitely. *See id.*, 347 Ark. at 625, 66 S.W.3d at 618.

The district court cited only one case, *Sewell v. Phillips Petroleum Co.*, 197 F. Supp. 2d 1160, 1168 (W.D. Ark. 2002), supporting the validity of the continuing trespass theory in Arkansas. That opinion in turn relied on the holding in *Coleman v. United Fence Co.,* 282 Ark. 344, 668 S.W.2d 536 (1984). At issue in *Coleman* was whether a trespasser could be transformed into an invitee or a licensee without the owner's consent. The mention of a continuing trespass theory in

*Coleman*, 282 Ark. at 345-46, 668 S.W.2d at 537, was unrelated to a statute-of-limitations issue; it concerned the trespasser's status for purposes of determining what duty a landowner owed him. The case furnishes no basis for tolling a statute of limitations in this or any other case.

### III.

The Arkansas Supreme Court has not determined which statute of limitations applies to actions brought under the AHWMA. When the forum state's highest court has not decided an issue, federal courts sitting in diversity must attempt to predict how the state's highest court would resolve the question. *United Fire & Cas. Ins. Co. v. Garvey,* 328 F.3d 411, 413 (8th Cir. 2003). In this case, the district court held that the statute of limitations for private suits under the AHWMA was three years because Arkansas law provides a three-year statute of limitations to "[a]ll actions founded on any ... liability, expressed or implied," Ark. Code § 16-56-105. We agree.

The district court erred, however, in finding that the three-year period for the AHWMA claim had not expired. As we have said, Highland learned of the existence and source of groundwater environmental quality violations in June, 1996, and that is when Highland's private right of action accrued. Highland's AHWMA claim was therefore barred when it filed suit in July, 1999.

### IV.

Arkansas law provides a five-year statute of limitations for claims for breach of a written contract. Ark. Code § 16-56-111. An action for breach of contract "accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time." *Ray & Sons Masonry Contractors v. United States Fid. & Guar. Co.*, 353 Ark. 201, 216, 114 S.W.3d 189, 198 (2003). In other words, the statute begins to run when the breach occurs. *See Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 203, 61 S.W.3d 801, 807 (2001).

According to Highland, BEI broke covenants in its lease by violating state and federal laws, by not maintaining the property and by returning it in a deteriorated condition, and by failing to indemnify Highland. The district court granted Highland summary judgment on two lease provisions requiring compliance with state statutes and regulations. Those claims, however, were barred by the statute of limitations which began to run when BEI violated state environmental laws. Any violations of these provisions ceased when BEI stopped illegal dumping and burning at the burn area by February, 1989. Thus, the statute of limitations for a claim based on these violations expired in 1994 at the latest.

Because it did not need to, the district court did not address the question of whether BEI had violated the lease covenant obligating BEI to surrender the property to Highland in as good a condition and state of repair as when received, ordinary wear and tear excepted. Highland's claim that this lease covenant was broken is not barred by the five-year statute of limitations because the covenant could not have been broken until BEI vacated the property: This is when Highland would first have a complete cause of action against BEI for violating this provision. *See Ray & Sons*, 353 Ark. at 216, 114 S.W.3d at 198. At common law, this kind of covenant was called a future covenant, not because it was not binding when made, but because it could not be broken until some time after it was made, in this case when the lease expired. Since BEI terminated its lease in 1997 and Highland filed suit in 1999, this claim was plainly made within the five-year statute-of-limitations period.

In a summary judgment motion, BEI asserted that its activities in the burn area constituted ordinary wear and tear. The district court denied summary judgment on this ground because, it said, whether the "wear and tear" that occurred was "ordinary and reasonable" involved a question of disputed material fact that made summary judgment inappropriate. *Cf. United Fire & Cas.*, 328 F.3d at 414; *Luschen Bldg. Ass'n v. Fleming Cos.*, 226 Neb. 840, 848-49, 415 N.W.2d 453, 458-59 (1987). BEI, however, did not move for summary judgment with respect to Highland's ability to

prove what condition the land was in before the commencement of the lease. It appears to us on the present record that Highland is unable to produce this evidence, and without it this claim obviously cannot survive. But since BEI did not move for summary judgment on this ground, we will remand the case to the district court for full consideration of this claim.

The final claim for breach of covenant is based on a provision in the lease requiring BEI to hold Highland harmless against any third parties. Highland, however, has not incurred any liability for the groundwater contamination. In fact, ADEQ is not requiring remediation but is recommending natural attenuation, the very solution that BEI proposed to deal with the groundwater contamination. At this time, therefore, it appears that there is no one to indemnify Highland against. "An action ... for indemnity accrues when the indemnitee is subjected to damage on account of its own liability ... [T]here must be a loss. An indemnitor's obligation to reimburse against loss does not become due until after the indemnitee has paid damages to a third party." *Ray & Sons*, 353 Ark. at 216, 114 S.W.3d at 198 (citations omitted). Highland has not been fined for the groundwater contamination on the property leased by BEI nor has the contamination plume migrated onto others' property. Until and unless Highland is found responsible to a third party for groundwater contamination caused by BEI, this claim for breach of covenant is not ripe.

V.

Having found BEI liable for damage to the property, the district court awarded Highland $500,000 in damages. The district court correctly noted that in Arkansas the measure of damages in tort for injury to land depends on whether the injury is remediable: "[W]here the injury to real property is permanent, the measure of damages is the difference in market value before and after the injury. ... [W]here the injury to real property is temporary, the measure of damages ... is the cost of restoration to [the property's] condition prior to the injury." *Benton Gravel Co. v. Wright*, 206 Ark, 930, 933-34, 175 S.W.2d 208, 209 (1943); *see also Diamond Lakes*,

347 Ark. at 625-26, 66 S.W.3d at 618. Since the burn area's groundwater can be treated and remediated, the district court awarded Highland full restoration costs of $500,000 even though the difference in the property's fair market value with and without the groundwater contamination was only $50,000.

The district court's damage award cannot stand because, for reasons that we have already indicated, the claims on which it was based are barred. The only claim that remains actionable is the one based on BEI's contractual duty to leave the leased property no worse off than it was at the beginning of the lease. "In general, damages recoverable for breach of contract are those damages which would place the injured party in the same position as if the contract had not been breached." *Dawson v. Temps Plus Inc.*, 337 Ark. 247, 258, 987 S.W.2d 722, 728 (1999). An award of the costs of restoration in this case on the remaining contract claim would therefore not be appropriate. A damage award of the difference between the fair market value of the burn area without groundwater contamination and the value of the burn area with the contamination will make Highland whole. If the claim of the breach of covenant proceeds to judgment in Highland's favor, it is this measure of damages that the district court must employ.

VI.

Arkansas law provides that "in any civil action to recover on ... [a] breach of contract, ... the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." Ark. Code § 16-22-308; *see also Barnhart v. City of Fayetteville*, 335 Ark. 57, 62, 977 S.W.2d 225, 227-28 (1998); *Security Pac. Hous. Servs., Inc. v. Friddle*, 315 Ark. 178, 186, 866 S.W.2d 375, 379 (1993). The district court awarded Highland $185,000 in fees because it was the prevailing party and its claims sounded primarily in contract. Since the underlying judgment in favor of Highland must be reversed, the fees award is vacated. If

Highland prevails on its remaining breach of contract claim, the district court may reassess the propriety of awarding a fee at that time.

## VII.

For the reasons indicated, we reverse the judgments of the district court, vacate its fee award, and remand for further proceedings not inconsistent with this opinion.

_____