**William L. PATTON, Jr., LLLP, Baird, Inc., and Arkansas Acquisitions, Inc., Plaintiffs**

v.

**TPI PETROLEUM, INC., f/k/a Total Petroleum, Inc., Defendant.**

**No. No. 4:04CV00081 JLH.**

United States District Court,
E.D. Arkansas,
Western Division.

Feb. 11, 2005.

John F. Peiserich, Friday, Eldredge & Clark, Little Rock, AR, for Plaintiffs.

Richard H. Mays, Richard H. Mays Environmental Legal Services, Little Rock, AR, for Defendant.

## OPINION AND ORDER

HOLMES, District Judge.

William L. Patton, Jr., LLLP, Baird, Inc., and Arkansas Acquisitions, Inc., com-

menced this action in the Circuit Court of Pulaski County, Arkansas, seeking damages for breach of contract, trespass, nuisance, negligence, and violation of the Arkansas Solid Waste Management Act, Ark. Code Ann. § 8–6–201 et seq. The defendant, TPI Petroleum, Inc., f/k/a Total Petroleum, Inc. ("TPI"), removed the case to this Court because the parties are citizens of different states and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332. Presently before the Court is TPI's motion to dismiss and for partial summary judgment (Docket # 10). TPI seeks dismissal of the claims for breach of contract, trespass, nuisance, punitive damages, and attorney's fees; and it asks for summary judgment on the breach of contract claim, should it survive the motion to dismiss, and on the statutory violation claim.[1] The Court heard oral argument on this motion on February 4, 2005. For the following reasons, the Court hereby grants in part and denies in part TPI's motion.

## Legal Standard

A motion to dismiss can be granted pursuant to Fed.R.Civ.P. 12(b)(6) only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 864 (8th Cir. 1999). "[A]s a practical matter, dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 829 (8th Cir.2003) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)). On a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff and accepts the allegations in the complaint as true. *See Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994). However, when "mat-

ters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(c). *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir.2002). In response to portions of the motion to dismiss, namely in respect to the breach of contract claim and the punitive damages claim, the parties have presented and argued evidence outside of the pleadings. The Court will treat the motion as one for summary judgment on those portions of the motion in which the Court considers matters beyond the pleadings.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir.2003). When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1985) (quoting Fed.R.Civ.P. 56(c)). The non-

---

1. TPI's motion does not seek dismissal of or summary judgment on the negligence claim.

moving party sustains this burden by showing that "there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.,* 260 F.3d 837, 841 (8th Cir.2001). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.,* 77 F.3d 263, 264 (8th Cir.1996).

### Undisputed Facts

This action arose after the plaintiffs paid for the removal of contaminated soil and water from property they own and had leased to TPI for a ten-year period beginning December 1, 1992. The property, located at 6137 West Markham, Little Rock, Arkansas, had been used as a service station and convenience store since approximately 1967. TPI entered into the lease on November 20, 1992, and operated a retail gasoline service station and convenience store on the property until July 25, 2002. On September 17, 2002, after deciding not to renew the lease, TPI removed three underground storage tanks from the property. During the removal process, it was discovered that the storage tanks had leaked. In response, TPI removed contaminated soil and groundwater from the tank area. SLA Environmental Services, Ltd., defendant's environmental consultant, submitted a Permanent Closure Report to the Regulated Storage Tank Division of the Arkansas Department of Environmental Quality ("ADEQ"). The SLA closure report documented the removal of the three tanks. Among other things, the report documented that evidence of leaks, namely contaminated soil and groundwater, had been detected in the tank area. The report stated that the contractor encountered contaminated soil and groundwater during the closure, that a vacuum truck recovered the contaminated groundwater from the tankhold and that tankhold backfill, consisting mainly of gravel, was returned to the tank pit. Both parties were aware of the information contained in the report. On October 25, 2002, ADEQ sent TPI a "no action letter" signed by Herman L. Springer, an Inspector for the Regulated Storage Tank Division of ADEQ, stating that ADEQ had received and reviewed the closure report and that it appeared that the regulatory requirements for the permanent closure of the storage tanks had been met. Based on this, ADEQ advised TPI that no further action was required at that time.

On November 30, 2002, TPI's lease term expired. On December 17, 2002, the plaintiffs and TPI entered into an agreement (the "2002 Agreement") wherein, for the consideration of fifteen thousand dollars, the plaintiffs accepted the return of all improvements in their existing condition. The plaintiffs waived and released TPI from all claims relating to the conditions of the improvements. They also granted TPI free access to the property should ADEQ require TPI to respond further regarding the underground storage tank area.

Meanwhile, on October 24, 2002, the plaintiffs entered into a lease agreement with Eyad Hassan, whereby Hassan would lease the property for a five-year term beginning December 1, 2002, for the operation of a service station and convenience store. After entering into the lease, Hassan began preparation for the installation

of a new underground storage tank system. Coulson Oil, Hassan's affiliate, and their consultant, Pollution Management, Inc., evaluated the property and determined that the new underground storage tanks would be placed where TPI had placed his storage tank system. Pollution Management began installation of the tanks but, during the process, discovered evidence of contamination and halted the installation. Samples taken from the tankhold area where TPI's underground storage tank system had been located revealed contamination in the backfill and sidewalls of the tankhold. Both the plaintiffs and TPI were notified of the contamination. Hassan requested that the plaintiffs address the contamination problem. In January and February, 2003, the plaintiffs hired their consultant, Bradshaw Environmental, to remove the contaminated soil and water from the property. Bradshaw Environmental excavated and disposed of 1,080 cubic yards of contaminated material along with 3,312 gallons of contaminated liquids. The plaintiffs also paid to replace a broken sewer line on the property. On April 24, 2003, the plaintiffs demanded indemnification from TPI under the lease agreement for "costs arising out of contamination from TPI's operations of the Premises ... and ... any future costs to remediate the property." Upon TPI's failure to indemnify the plaintiffs, the plaintiffs filed this action.

### Breach of Contract

■ Section 10 of the parties' lease agreement states in part:

*Indemnification:* The Tenant shall save the Landlord harmless from and indemnify it against, any liabilities, response cost, cost or expense to the premises of adjoining and nearby property arising out of or incident to the use of the Premises by the Tenant, its customers, invitees, licensees or employees. Without limiting the generality of the forego-

ing, the Tenant shall indemnify and hold harmless the Landlord against any liability, response cost, cost or expense arising out of any environmental contamination occurring on the Premises during the term of this Lease and caused by the Tenant's operations on the Premises, whenever discovered.

If a party seeking indemnification under the foregoing provisions (the "Indemnified Party") becomes aware of a claim for which such Indemnified Party may be entitled to indemnity, the Indemnified Party shall give prompt notice thereof to the other party (the "Indemnitor") and shall provide all information and documents available to the Indemnified Party relevant to such claim. Within thirty (30) days after receipt of such notice, the Indemnitor shall notify the Indemnified Party whether the Indemnitor agrees that the claim is fully covered by the indemnity, or whether the Indemnitor contends that the claim is not covered by the indemnity. If the Indemnitor has agreed that the claim is covered by the indemnity, the Indemnitor shall have the right to defend the claim at its own expense and to compromise, settle or otherwise dispose of such claim as the Indemnitor sees fit. If the Indemnitor has contended that the claim is not covered by the indemnity, or has failed to respond to the notice, then the Indemnified Party may defend the claim and may enter into any reasonable settlement thereof and later assert such party's rights against the Indemnitor.

The plaintiffs contend that TPI has breached Section 10 by failing to indemnify the plaintiffs for the costs associated with removing the environmental contamination. TPI contends that payment of damages to a third-party claimant is a condition precedent to bringing an action for indemnification. TPI also argues that the indemnity agreement read as a whole

covers only claims made against the plaintiffs by third-parties. The plaintiffs take issue with TPI's narrow view of indemnification and argue that the contract provides for reimbursement under these circumstances.

■ As used in Arkansas case-law, the terms *indemnity* and *indemnification* generally have referred to reimbursement for liability to a third party. *See e.g., Cherry v. Tanda,* 327 Ark. 600, 940 S.W.2d 457 (1997); *Arkansas Kraft Corp. v. Boyed Sanders Constr. Co.,* 298 Ark. 36, 764 S.W.2d 452 (1989); *Larson Machine, Inc. v. Wallace,* 268 Ark. 192, 600 S.W.2d 1 (1980). However, in no Arkansas case known to this Court has the issue been decided as to whether those terms may sometimes mean simply reimbursement. BLACK'S LAW DICTIONARY 783 (8th ed.2004) defines *indemnification* as "[t]he action of compensating for loss or damage sustained." The verb *indemnify* means "to reimburse (another) for a loss suffered because of a third party's or one's own act or default." *Id.* at 783–84. "An agreement to indemnify another is an agreement by one person to hold another harmless for loss or damage as may be specified in the agreement, or in which the indemnitor promises to reimburse his indemnitee for loss suffered." 42 C.J.S. *Indemnity* § 2 (1991) (citations omitted). Indemnification, then, may encompass broader liability if the parties so intend. *Dream Theater, Inc. v. Dream Theater,* 124 Cal. App.4th 547, 21 Cal.Rptr.3d 322, 329 (2004). *See also Worth v. Aetna Cas. & Sur. Co.,* 32 Ohio St.3d 238, 513 N.E.2d 253, 257 (1987) (finding that an employment agreement authorizing company executives to retain legal counsel and to be reimbursed for the cost by the company constituted an indemnity agreement). The mere fact that a provision in a contract uses the term *indemnity* or *indemnification* does not restrict that provision to third-party claims. *Indemnity or indemnification* can mean simply reimbursement.

■ Indemnification agreements are contracts to be construed in accordance with general rules of contract construction. *Chevron U.S.A., Inc. v. Murphy Exploration & Prod. Co.,* 356 Ark. 324, 329, 151 S.W.3d 306, 310 (2004) (citations omitted). The court's duty is to construe the writing in accordance with the plain meaning of the language employed. *Weaver-Bailey Contractors, Inc. v. Fiske-Carter Construction Company,* 9 Ark.App. 192, 195, 657 S.W.2d 209, 210 (1983). In doing so, the court must construe indemnity agreements strictly against the party seeking indemnification. *East–Harding, Inc. v. Horace A. Piazza & Assocs.,* 80 Ark.App. 143, 149, 91 S.W.3d 547, 551 (2002). "[I]n contracts of indemnity the losses to be indemnified must be clearly stated and the intent of the indemnitor's obligation to indemnify against them must be expressed in clear and unequivocal terms and to such an extent that no other meaning can be ascribed." *Chevron,* 356 Ark. at 330, 151 S.W.3d at 310 (citations omitted). If the agreement is unambiguous, then the court need not resort to rules of construction. *Ray & Sons Masonry Contractors v. United States Fid. & Guar. Co.,* 353 Ark. 201, 211, 114 S.W.3d 189, 195 (2003) (citing *Nabholz Constr. Corp. v. Graham,* 319 Ark. 396, 401, 892 S.W.2d 456, 459 (1995)). The Court must initially determine the existence of ambiguity; if the Court finds that the writing contains an ambiguous term, it will admit parol evidence. *First Nat. Bank of Crossett v. Griffin,* 310 Ark. 164, 169, 832 S.W.2d 816, 819 (1992) (citing *C & A Constr. Co., Inc. v. Benning Constr. Co.,* 256 Ark. 621, 509 S.W.2d 302 (1974)). The meaning of the ambiguous term then becomes a question of fact for the factfinder. *Id.*

TPI argues that the Eighth Circuit decision in *Highland Industrial Park, Inc. v. BEI Defense Systems Co.*, 357 F.3d 794 (8th Cir.2004) should control in this case. In *BEI*, the court held that the indemnification provision in the parties' lease agreement foreclosed indemnification for response costs incurred by the lessor to remediate environmental contamination caused by the lessee. *Id.* at 799. In holding that the breach of covenant claim was not ripe, the court stated that the indemnity provision in that lease "requir[ed] BEI to hold Highland harmless against any third parties." *Id.* Given that the indemnity provision here is not so clearly limited, this case does not affect the Court's decision.

The indemnification provision at hand is found in Section 10 of the lease. That section consists of two paragraphs. The first paragraph sets forth two scenarios in which TPI would be obligated to indemnify the plaintiffs. The first sentence states, "[t]he Tenant shall save the Landlord harmless from and indemnify it against, any liabilities, response cost, cost or expense to the premises of adjoining and nearby property arising out of or incident to the use of the Premises by the Tenant, its customers, invitees, licensees or employees." This sentence addresses liability for harm to neighboring property. TPI's duty to indemnify under this language likely would not arise until receipt of a third-party's demand.

The next sentence states, "the Tenant shall indemnify and hold harmless the Landlord against any liability, response cost, cost or expense arising out of any environmental contamination occurring on the Premises during the term of this Lease and caused by the Tenant's operations on the Premises, whenever discover-

ed." This sentence addresses contamination on the leased premises. Unlike the sentence before, nothing in this sentence requires damage to a third-party. This sentence requires indemnification for "*any* liability, response cost, cost or *expense* arising out of *any* environmental contamination occurring on the Premises...." (Emphasis added.) This sentence is broad: it requires indemnification for any expense arising out of any environmental contamination. The plain language of this sentence does not restrict liability to third-party claims. The plaintiffs did incur expense arising out of environmental contamination on the premises.[2] Hence, the plain language of this sentence, standing alone, would require TPI to indemnify the plaintiffs in this case.

■ As TPI correctly points out, however, the intention of the parties must be gathered from an instrument as a whole. *Hartford Ins. Co. of the Midwest v. Brewer*, 54 Ark.App. 1, 3, 922 S.W.2d 360, 362 (1996) (citing *Continental Cas. Co. v. Davidson*, 250 Ark. 35, 41, 463 S.W.2d 652, 655 (1971)); *Griffin*, 310 Ark. at 169–70, 832 S.W.2d at 819; *Anthony v. La. A. Ry. Co.*, 316 F.2d 858, 865 (8th Cir.1963). The second paragraph of the indemnity provision specifies procedures for the prompt notice of claims, the exchange of relevant information and documentation, and the rights of the parties after acceptance or denial of coverage of the claim under the provision. This second paragraph contemplates indemnity for claims asserted against the lessor by third parties. TPI argues that this paragraph is evidence that the indemnity provision of the lease extends the right to indemnification only to third-party claims. Since the plain language of the second sentence does not

---

2. Whether the contamination occurred during the term of the lease is not before the Court on this motion.

require third party claims, and since the second paragraph contemplates only third-party claims, the indemnity provision is ambiguous. This ambiguity creates a genuine issue of material fact that precludes the Court from granting summary judgment in favor of TPI on this claim.

 Contrary to TPI's argument, the 2002 Agreement does not act as a novation of the indemnity provision in the lease. A novation is "the substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished." *Barton v. Perryman*, 265 Ark. 228, 231–32, 577 S.W.2d 596, 599 (1979) (citing *Riddick v. White*, 194 Ark. 1010, 110 S.W.2d 9 (1937)). The burden of establishing a novation is borne by the party claiming it, and there must be a clear and definite intention that novation is the purpose of the later agreement. *Metro. Trust Co. v. Wolf*, 8 Ark. App. 1, 4, 648 S.W.2d 494, 496 (1983) (citations omitted). It has been stated that "the intent of the parties 'should be so evident as not to admit of a doubt.'" *Id.* (quoting *Cockrill v. Johnson*, 28 Ark. 193 (1873)).

The 2002 Agreement provided:

For and in consideration of the sum of Fifteen Thousand and No/100 Dollars ($15,000.00), the receipt of which is hereby acknowledged, William L. Patton Jr., LLLP, Arkansas Acquisitions, Inc. and Baird, Inc. (collectively "Lessors"), being the owners of the real property and improvements located at 6317 Markham, Little Rock, Arkansas (the "Premises"), and the former lessors of the Premises to TPI Petroleum, Inc. ("TPI"), under a lease which expired on November 30, 2002 (the "Lease"), do hereby accept the return of all improvements located at the Premises in the condition in which such improvements existed upon the ex-

piration of the Lease, "As–Is", "Where–Is" and "With All Faults"; and Lessors hereby waive and release all claims against TPI related to the conditions of the improvements at the Premises.

Reference is made to that certain letter dated October 25, 2002, to TPI from Herman L. Springer, Inspector for the Regulated Storage Tank Division of the Arkansas Department of Environmental Quality ("ADEQ"). Based upon such letter and subsequent discussions with Mr. Springer, it would appear that TPI will not be required to perform any further environmental investigations, testing or remediation at the Premises. However, should the ADEQ require TPI to perform further investigations, testing or remediation at the Premises, Lessors agree to grant TPI access to the Premises free of charge to undertake such activities, so long as TPI agrees to (I) perform the activities in accordance with applicable ADEQ requirements, (ii) perform the activities in such a manner as to not unreasonably interfere with business activities at the Premises, and (iii) repair any damage to the Premises caused by the activities.

The first paragraph of this agreement, by the admission of TPI, relates to Section 13 of the lease agreement. Section 13 is entitled *Construction and Removal of Structures* and states:

Subject to Section 7. *Use*, of this Lease Agreement, the Tenant may, during the term of this Lease, demolish, remove or remodel existing improvements on the Premises, construct, remove or remodel new improvements on the Premises, and install fixtures, machinery, equipment and storage tanks. At the termination of this Lease, and only if Landlord gives prior written consent, can the Tenant leave in place and abandon any or all improvements. Otherwise, Tenant must

remove same with reasonable good workmanship subject to federal, state and local laws and ordinances and the locations thereof shall be cleared and graded.

■ The first paragraph of the 2002 Agreement does not relate to Section 10 of the lease, which is the indemnification provision. Thus, it cannot act as a novation of that provision. Despite TPI's efforts to color it as such, neither does the second paragraph of the 2002 Agreement release TPI from whatever liability it might have under indemnification provision. The second paragraph of the 2002 Agreement grants TPI access to the property in the event that ADEQ should require further action on the premises. In granting this access right, the agreement referenced the fact that ADEQ had issued TPI a "no further action" letter and that, based upon this letter, the parties believed that TPI would not be required to perform further remediation. However, nothing in the 2002 Agreement released TPI from liability under Section 10 of the lease—the indemnity provision. TPI has not met its burden of proving that it was released from liability under Section 10, and thus is not entitled to judgment as a matter of law on the breach of contract claim.

## Attorney's Fees

The plaintiffs seek attorney's fees under Ark.Code Ann. § 16–22–308. That section provides, in relevant part, "[i]n any civil action to recover on ... breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." Ark.Code Ann. § 16–22–308. TPI moves to dismiss this claim on the ground that the plaintiffs' claim for breach of contract should be dismissed. Since the plaintiffs' claim for breach of contract will not be dismissed, neither will the claim for attorney's fees likewise be dismissed. TPI's motion will be denied as to this claim.

## Trespass

■ The plaintiffs assert a claim for trespass, alleging that "[TPI], without the [plaintiffs'] consent and without legal right, intentionally, willfully and recklessly caused regulated substances to enter the [plaintiffs'] property, resulting in a trespass." TPI argues that the plaintiffs cannot maintain an action for trespass because TPI had the authorization and consent of the plaintiffs to enter the land pursuant to the lease. Viewing the cause of action as pled, the Court must dismiss the trespass count. The law of trespass protects rights and interests in land from direct invasion by physical forces. 1 DAN B. DOBBS, THE LAW OF TORTS § 52 (2001). These rights include the right to exclusive possession and the right of physical integrity of the land. *Id.* One is liable to another for common law trespass if one "intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." RESTATEMENT (SECOND) TORTS § 158 (1965).

Courts have held that a person in lawful and exclusive possession of property, whether a former owner or a tenant, will not be held liable for trespass based upon the original act of contamination, because, at the time of the contamination, the intrusion was not to land *of another. See e.g.,* *Graham Oil Co. v. BP Oil Co.,* 885 F.Supp. 716, 724–25 (W.D.Pa.1994) (stating that when a leak in the former tenant's underground storage tanks allegedly contaminated the leased property, the tenant was authorized to possess the land pursuant to a lease and thus could not be held liable for the original interference); *Wellesley*

*Hills Realty Trust v. Mobil Oil Corp.*, 747 F.Supp. 93, 99 (D.Mass.1990) (under the Restatement § 158 definition of trespass, a former owner was not liable because release of oil was onto its own land); *Wilson Auto Enter., Inc. v. Mobil Oil Corp.*, 778 F.Supp. 101, 106 (D.R.I.1991) ("The presence of contaminants leaked during [defendant]'s leasehold, therefore, would give no basis for [plaintiff]'s trespass claim."). Hence, TPI cannot be held liable under common law trespass for the actual release of contamination during his lease term, which is the only trespass claim that the plaintiffs have attempted to plead.

The plaintiffs oppose dismissal of the trespass claim by arguing that, while TPI entered under the plaintiffs' authorization and consent, release of the contaminants exceeded its rights under the lease. The plaintiffs analogize this case to *Quality Excelsior Coal Co. v. Reeves*, 206 Ark. 713, 177 S.W.2d 728 (1944),[3] a case in which the parties had signed a coal mining lease agreement, awarding the lessee the right to mine and remove the coal remaining beneath the surface of the lessor's property. The lessor of property brought an action for damages against the lessee because the lessee had been hauling coal removed from adjacent lands across subterranean passages on the lessor's property. *Id.* at 715–16, 177 S.W.2d at 729. The Arkansas Supreme Court awarded recovery to the lessor, holding that these actions constituted a trespass because the lessee did not have an unrestricted right to use these passages to remove coal from other's land. *Id.* at 719, 177 S.W.2d at 731. *Reeves* is not on point. In *Reeves*, the lessee did not have the right to exclusive possession of the property; he enjoyed certain limited rights to mine coal under

the surface of the lessor's property. Here, TPI was in exclusive possession of the property as a long-term tenant. The reasoning stated in the cases cited above applies here.

Therefore, the Court dismisses the plaintiffs' claim for trespass without prejudice.

### Nuisance

■ The plaintiffs also assert a claim for private nuisance, alleging, "[TPI]'s unreasonable and unwarranted conduct, as described above, constitutes an unreasonable interference with the [plaintiffs'] use and enjoyment of its property and has caused the [plaintiffs] harm. The presence of regulated substances on the [plaintiffs'] property creates a danger of fire or explosion, a hazard to the health of persons and the environment and diminishes the value of and uses for the [plaintiffs'] property."

■ TPI argues that Arkansas law permits a nuisance claim only when separate parcels of property are involved. The plaintiffs respond by arguing that TPI's possession was exclusive of the plaintiffs' ownership and thus its actions constituted interference with *another's* land. Arkansas defines nuisance as "conduct by one landowner that unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property that disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property." *Goforth v. Smith*, 338 Ark. 65, 79, 991 S.W.2d 579, 587 (1999); *Southeast Ark. Landfill, Inc. v. State*, 313 Ark. 669, 673, 858 S.W.2d 665, 667 (1993); *Milligan v. Gen. Oil Co., Inc.*, 293 Ark. 401, 404, 738 S.W.2d 404, 405 (1987). Courts that have considered claims by lessors or subsequent

---

**3.** The plaintiffs also cite *Whipple v. Gorsuch*, 82 Ark. 252, 101 S.W. 735 (1907), another case involving a landlord and tenant. That case has no applicability here. In that case, the plaintiff brought a civil action for malicious prosecution based on a *criminal* trespass charge.

owners involving one parcel of land have rejected them on the grounds that private nuisance requires an interference with a neighbor's use and enjoyment of the land. *See Rose v. Grumman Aerospace Corp.*, 196 A.D.2d 861, 862, 602 N.Y.S.2d 34 (2d Dep't 1993) ("Because the injury complained of was to the same property as that on which the nuisance was alleged to exist, the [lessor's] nuisance cause of action should have been dismissed."); *Drouin v. Ridge Lumber, Inc.*, 209 A.D.2d 957, 959, 619 N.Y.S.2d 433 (4th Dep't 1994) ("We agree that [lessor] cannot recover on a theory of public or private nuisance for [lessee]'s alleged interference with [lessor's] rights as remaindermen of the property leased to [lessee]."); *See also Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 313–15 (3rd Cir.1985); *Mayor and Council of Rockaway v. Klockner & Klockner*, 811 F.Supp. 1039, 1057–58 (D.N.J.1993); *Berry v. Armstrong Rubber Co.*, 780 F.Supp. 1097, 1103 (S.D.Miss. 1991); *Wilson*, 778 F.Supp. at 106; *Hanlin Group, Inc. v. Int'l Minerals & Chemical Corp.*, 759 F.Supp. 925, 935 (D.Me. 1990); *Wellesley Hills*, 747 F.Supp. at 98–99; *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 80, 642 A.2d 180, 190–91; *Abraham v. BP Exploration & Oil, Inc.*, 149 Ohio App.3d 471, 478, 778 N.E.2d 48, 53 (Ohio App. 10 Dist.2002). *But see Graham Oil Co. v. BP Oil Co.*, 885 F.Supp. 716, 723–25 (W.D.Pa.,1994); *Arawana Mills Co. v. United Tech. Corp.*, 795 F.Supp. 1238, 1250 (D.Conn.1992).

The law of nuisance has provided a remedy for many improper uses of land over time, but the definition of nuisance in Arkansas does not encompass the facts in the instant case. *See Sewell v. Phillips Petroleum Co.*, 197 F.Supp.2d 1160, 1172 (W.D.Ark.2002). To adopt the plaintiffs' position would be to depart from the historic role that the law of private nuisance has played as a means of efficiently resolving conflicts between neighboring, contemporaneous land uses. *Cf. Triffler v. Hopf*, 1994 WL 643237, at *8 (N.D.Ill.1994). For this reason, the plaintiffs' claim for private nuisance is dismissed without prejudice.

### Punitive Damages

 The plaintiffs seek punitive damages, alleging that "[TPI] knew, or through the exercise of ordinary caution, should have known, that a release of regulated substances at the [plaintiffs'] property would result in harm to the [plaintiffs'] property. Notwithstanding this knowledge, [TPI] acted with conscious indifference to the possibility of causing the injuries complained of herein." The Supreme Court of Arkansas has stated that "[p]unitive damages are to be a penalty for conduct that is malicious or done with the deliberate intent to injure another." *Edwards v. Stills*, 335 Ark. 470, 483, 984 S.W.2d 366, 373 (1998) (citations omitted). "It must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred." *Union Pacific R.R. Co. v. Barber*, 356 Ark. 268, 296, 149 S.W.3d 325, 343 (2004). Negligence, no matter how gross, will not support an award for punitive damages. *Edwards*, 335 Ark. at 484, 984 S.W.2d at 373.

As shown by the SLA closure report submitted to ADEQ, TPI knew as of September 17, 2002, that the tanks had leaked. The plaintiffs also knew of the leak at this time, according to their own admission. However, it is not enough for the plaintiffs to show that TPI knew the leak occurred. They must show that TPI "knew, or had reason to believe that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred." *Barber*, 356 Ark. at 296, 149 S.W.3d at 343. In

September, TPI removed some contamination and documented the closure of the tanks in the SLA report. Based on this report, TPI received a "no further action" letter from ADEQ. The plaintiffs were aware of the pending ADEQ letter before it was issued and referenced the letter in the 2002 Agreement once it was. The plaintiffs have not presented this Court with any evidence showing that TPI knew or should have known that the levels remaining after the closure were harmful or capable of injury. Counsel for the plaintiffs conceded at oral argument that TPI had no more knowledge than the plaintiffs of the extent of any contamination and the potential need for further remediation. Both parties had the SLA closure report. No evidence shows malice or conscious indifference from which malice might be inferred. TPI is entitled to summary judgment on the punitive damage claim.

## Violation of Arkansas Solid Waste Management Act

█ The plaintiffs seek damages under the Arkansas Solid Waste Management Act, Ark.Code Ann. §§ 8–6–201 *et. seq.* They claim that TPI has violated the Arkansas Solid Waste Management Act by disposing of solid waste in such a way that causes pollution of the plaintiffs' property without right, legal privilege, or the plaintiffs' consent. Ark.Code Ann. § 8–6–205(a) provides in relevant part:

It shall be illegal for any person:

. . . . .

(5) To sort, collect, transport, process, or dispose of solid waste contrary to the rules, regulations, or orders of the department or in such a manner or place as to create or be likely to create a public nuisance or a public health hazard or to cause or be likely to cause water or air pollution within the meaning of the Arkansas Water and Air Pollution Control Act, § 8–4–101 *et seq.*

A.C.A. § 8–6–205. Ark.Code Ann. § 8–6–206 provides a private right of action: "[a]ny person adversely affected by a violation of this subchapter or of any rules, regulations, or orders issued pursuant thereto shall have a private right of action for relief against the violation."

TPI makes several arguments in support of its motion for summary judgment on this claim. TPI argues that underground petroleum storage tanks in Arkansas are regulated exclusively by the Regulated Substance Storage Tank Law, Ark. Code Ann. § 8–7–801 *et seq.*, and Regulation 12 of the Arkansas Pollution Control and Ecology Commission. TPI states that the Regulated Substance Storage Tank Law and the regulations promulgated under it provide technical standards for the construction and installation of underground storage tanks, leak detection requirements, reporting requirements, and prompt response actions upon detection. It contends that the plaintiffs' attempt to impose liability under the Arkansas Solid Waste Management Act conflicts with the Regulated Substance Storage Tank Law and thus, pursuant to Ark.Code Ann. § 8–7–812, the Regulated Substance Storage Tank Law governs. Ark.Code Ann. § 8–7–812 provides:

The provisions of this subchapter and the rules and regulations promulgated pursuant to it shall govern if they conflict with the provisions of the Arkansas Water and Air Pollution Control Act, § 8–4–101 et seq., the Arkansas Solid Waste Management, § 8–6–201 et seq., or the Arkansas Hazardous Waste Management Act of 1979, § 8–7–201 et seq., or any action taken by the Arkansas Department of Environmental Quality under those laws.

Should the Arkansas Solid Waste Management Act provide the plaintiffs a remedy for TPI's actions, that remedy would

not conflict with the Regulated Substance Storage Tank Law. Such a remedy would be in addition to, not in conflict with, the regulations found in that statute. The Regulated Substance Storage Tank Law was enacted to give the Arkansas Pollution Control and Ecology Commission the power to license individuals for the installation and testing of underground storage tanks, as well as to administer and enforce detection, prevention, and corrective action programs relating to their use. Ark.Code Ann. § 8–7–802. This Act serves to encourage the prevention and correction of leaks on the administrative level, but it does not provide the exclusive remedy for storage tanks leaks. Had the Arkansas General Assembly intended it to exclude all other remedies, it would have expressed this intention.[4] Instead, the Regulated Substance Storage Tank Law states that its provisions "shall govern if they conflict" with the Solid Waste Management Act. The two acts could conflict only if both could apply to storage tanks. If the Arkansas Solid Waste Management Act could never apply to storage tanks, there would be no possibility that the two acts would ever conflict. The Regulated Substance Storage Tank Law does not supersede the Solid Waste Management Act absent a conflict.

Courts across the country have decided substantially the same issue in reference to the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. ("RCRA"): That Act provides for a private right of action "against any person ... who has contributed to or who is contributing to the ... disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). In response to plaintiffs who have invoked this private right of action against gas station owners, operators, and lessees for contamination caused by petroleum-leaking underground storage tanks, defendants have argued that Subtitle IX of RCRA entitled "Regulation of Underground Storage Tanks" exclusively governed storage tanks. In virtual unanimity, the courts have held that it did not. See Waldschmidt v. Amoco Oil Co., 924 F.Supp. 88 (C.D.Ill.1996); Nicholas J. Murlas Trust v. Mobil Oil Corp., 1995 WL 505468 (N.D.Ill. Aug. 18, 1995); Dydio v. Hesston Corp., 887 F.Supp. 1037 (N.D.Ill. 1995); Agricultural Excess and Surplus Ins. Co. v. A.B.D. Tank & Pump Co., 878 F.Supp. 1091 (N.D.Ill.1995); Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc., 877 F.Supp. 476 (D.Minn.1995); Dominick's Finer Foods, Inc. v. Amoco Oil Co., 1993 WL 524808 (N.D.Ill. Dec. 15, 1993); Paper Recycling, Inc. v. Amoco Oil Co., 856 F.Supp. 671 (N.D.Ga.1993); Zands v. Nelson, 779 F.Supp. 1254 (S.D.Cal.1991), modified, 797 F.Supp. 805 (S.D.Cal.1992). In view of the similarity between the Arkansas statutory scheme and the RCRA, the same statutory construction should apply.

 TPI makes several other arguments as to why summary judgment should be granted. First, it argues that, should the Arkansas Solid Waste Management Act apply, summary judgment should be granted because the plaintiffs were not "adversely affected" due to the

4. The Arkansas General Assembly has explicitly provided in other statutes that those statutes serve as the exclusive remedy. For example, the Worker's Compensation statute provides that "[a] purpose of this section is to preserve the exclusive remedy doctrine...." Ark.Code Ann. § 11–9–107(e). In a section of the Arkansas Code dealing with business partnerships, the statute provides, "[t]his section provides the exclusive remedy by which a judgment creditor of a partner or partner's transferee may satisfy a judgment out of the judgment debtor's transferable interest in the partnership." Ark.Code Ann. § 4–46–504(e). See also Ark.Code Ann. § 12–75–129(b).

fact that TPI removed contamination from the property and received a "no further action" letter the benefit of which inured to the plaintiffs. Despite the "no action letter," if TPI violated the Arkansas Solid Waste Management Act, there is evidence from which a jury could conclude that the plaintiffs were adversely affected by that violation inasmuch as the plaintiffs had to remove contamination to accommodate the needs of their new tenant.

Second, TPI argues that a release of contaminants does not violate any law, regulation, or rule. Because this argument hinges on whether a violation of the Solid Waste Management Act conflicts with the Regulated Substance Storage Tank Law and thus is superseded, and the Court has held that it does not, TPI's argument fails.

Finally, TPI argues that the private right of action under § 8–6–206 does not provide the plaintiffs the remedy they seek. TPI asserts that § 8–6–206 provides private citizens only injunctive relief. Section 8–6–206 provides, "[a]ny person adversely affected by a violation of this subchapter or of any rules, regulations, or orders issued pursuant thereto shall have a private right of action *for relief* against the violation." Ark.Code Ann. § 8–6–206 (emphasis added). TPI's argument that *relief* means injunctive relief to the exclusion of damages is unpersuasive. Fed. R.Civ.P. 8(a) and Ark. R. Civ. P. 8(a) both use the term *relief* to refer to any remedy that a court might grant, including damages. There is no reason to believe that the Arkansas General Assembly intended to use the term *relief* to have a narrower meaning than its meaning in Rule 8(a). Had the General Assembly intended to limit relief to injunctive relief or equitable relief, it could easily have done so by inserting *injunctive* or *equitable* before *relief*.

The Court finds that summary judgment on the statutory claim is not proper at this time. TPI has failed to meet its burden of showing that there is no genuine issue of material fact as to the statutory violation claim.

## CONCLUSION

For the reasons stated above, TPI's motion for summary judgment is DENIED as to the breach of contract and statutory violation claims and GRANTED as to the punitive damages claim. TPI's motion to dismiss is DENIED as to the plaintiffs' claim for attorney's fees and GRANTED as to the trespass and nuisance claims. The plaintiffs' trespass and nuisance claims are dismissed without prejudice.