929 A.2d 892

**Michael HANNA, Jr., et al.**

v.

**ARE ACQUISITIONS, LLC.**

**No. 87, Sept. Term, 2006.**

Court of Appeals of Maryland.

Aug. 22, 2007.

Thomas J. Minton (Kathryn Miller Goldman, Lara K. Simon, Goldman & Minton, P.C., Baltimore, on brief), for petitioners.

David G. Mandelbaum (Charles S. Hirsch, Robert A. Scott, Ballard Spahr Andrews & Ingersoll, LLP, Baltimore, on brief), for respondent.

Argued before RAKER,*CATHELL, HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, Specially Assigned) and ALAN M. WILNER, (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

The issue in this case is whether the officers and directors of a tenant corporation committed a trespass by leaving the tenant's materials on the leased premises and not removing the materials at the time of, or subsequent to, the termination of the lease. The individual petitioners are officers and directors of Intracel Corporation. Two corporate entities affiliated with Intracel are also petitioners.[1] The petitioners argue that the Court of Special Appeals erred when it held that a cause of action for trespass may lie against them. The respondent is ARE Acquisitions, LLC, the owner of the leased premises. ARE argues that the officers and directors of Intracel, by "leaving chattels on the premises after [their] right to be on the premises has expired," committed a trespass. We shall hold that no cause of action for trespass lies against the petitioners. The petitioners' actions do not amount to a trespass under Maryland law.

## I.

ARE's predecessor, as landlord, and Intracel, as tenant, were parties to a ten year lease entered into on January 15, 1997, of a building in Rockville, Maryland. In June 1997,

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Hereafter, for convenience, the phrase "officers and directors" will sometimes be used to include both the individual petitioners and the two corporate petitioners.

ARE purchased the property and thus became the landlord under the lease. Intracel, as tenant, was a biopharmaceutical company engaged in the business of developing vaccines and other products for the treatment of various diseases. Intracel used the property for its office and laboratory. The equipment and materials utilized by Intracel were typical in the biopharmaceutical industry and included biological agents, radioactive material, various chemicals including acids, lacquer thinner, oxygen, argon, cagewashing detergent and sodium hydroxide. In addition, Intracel used incinerators, irradiators, syringes, and other equipment.

In 1998, Intracel was suffering financial difficulties. By September 2000, Intracel stopped paying rent in a timely manner and defaulted under the lease. ARE agreed to give Intracel additional time to cure its default under the lease and to refrain from evicting Intracel during the additional time period. Intracel, however, failed to cure its default and by early 2001 owed ARE a rental arrearage in excess of $400,000. On April 4, 2001, ARE notified Intracel that the lease was terminated effective April 19, 2001, and that Intracel was required to vacate the premises by that date. Intracel requested and was granted additional time to complete its move and ultimately vacated the premises by April 30, 2001.

ARE contended that Intracel's officers and directors committed a trespass because, when they vacated the property, Intracel's officers and directors "left the Premises in disarray, abandoning large quantities of unwanted hazardous waste and contaminated materials, including but not limited to biological agents, radioactive materials and dangerous chemicals at the Premises." ARE alleged that, because it "did not know what all the materials were, and because some were obviously chemically hazardous, biohazardous, or radioactive, the condition of the building posed a risk to ARE's employees, other tenants, any new tenant, and the general public." In July 2001, ARE hired a contractor to clean up the materials left behind by Intracel. Intracel filed a bankruptcy petition in the United States Bankruptcy Court for the District of Maryland

on September 12, 2001, and ARE was one of the largest unsecured creditors in the bankruptcy action.

In September 2002, ARE instituted this action in the Circuit Court for Montgomery County, seeking both compensatory and punitive damages. The operative pleading is ARE's second amended complaint, filed on March 18, 2004. In that complaint, ARE named seven of Intracel's officers and directors as defendants.[2] Intracel itself was not a defendant. ARE also included as defendants Intracel Acquisition Holding Company, LLC (IAHC) and Dublind Partners, Inc. According to the second amended complaint, IAHC was a company set up and controlled by the individual defendants "to acquire Intracel, control its operations, and protect IAHC's investment in Intracel." ARE alleged that Dublind Partners, Inc. was "set up and controlled by Defendants Lindsay and Dubroff, [and] controlled IAHC and Intracel's operations."

The second amended complaint included several alleged causes of action, including, *inter alia*, trespass, tortious interference with contract, "aiding and abetting trespass," waste, negligence, and "aiding and abetting waste." The only asserted cause of action which remains in the case is trespass. In its second amended complaint, ARE claimed that the defendants "directed, were aware of, and participated in the conduct of Intracel which caused waste and contaminated materials to be deposited, abandoned and strewn about the Premises, which . . . constituted an unauthorized entry to the Premises." In addition, ARE asserted in the trespass count that "Defendants Dublind, IAHC, Nardin, Durbroff, Lindsay, Fox, Hanna and Swindle controlled the cash flow of Intracel and refused to authorize the payment of the funds necessary to remove the hazardous waste and materials and restore the Premises to its proper condition."

The Circuit Court for Montgomery County granted the defendants' motion to dismiss all the counts in the second

---

2. The individual defendants were Michael G. Hanna, Jr., Peter R. Nardin, Richard P. Cox, Jonathan C. Swindle, Charles Dubroff, Charles J. Lindsay, and

amended complaint except those relating to trespass and waste, and to dismiss the request for punitive damages. Thereafter, ARE filed a motion for summary judgment on the trespass count, and the Circuit Court denied the motion. The defendants then filed a motion for summary judgment on the remaining counts, submitting transcripts of depositions, interrogatories and answers to the interrogatories. After reviewing the material and holding a hearing on the motion, the Circuit Court granted summary judgment in favor of the defendants on the remaining counts which related to trespass and waste.

ARE appealed to the Court of Special Appeals, arguing that the Circuit Court erred in dismissing the negligence count and the request for punitive damages. ARE also contended that the grant of summary judgment in favor of the defendants on the trespass and waste counts was erroneous.

In an unreported opinion, the Court of Special Appeals affirmed the Circuit Court's rulings on all counts except the trespass count. In holding that the Circuit Court erred in granting summary judgment as to trespass, the intermediate appellate court chiefly relied on the Restatement (Second) of Torts. The pertinent sections of the Restatement provide as follows (emphasis added):

" § 158.   Liability for Intentional Intrusions on Land

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

(a) enters the land in the possession of the other, or causes a thing or a third person to do so, or

(b) remains on the land, or

(c) *fails to remove from the land a thing which he is under a duty to remove.*

\*       \*       \*

" § 161.   Failure to Remove Thing Tortiously Placed on Land

(1) A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it.

(2) A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor's predecessor in legal interest therein has tortiously placed there, if the actor, having acquired his legal interest in the thing with knowledge of such tortious conduct or having thereafter learned of it, fails to remove the thing."

The Court of Special Appeals concluded that § 158(c) was the section which covers the present case. In reaching this conclusion, the intermediate appellate court distinguished this Court's decision in *Rosenblatt v. Exxon*, 335 Md. 58, 642 A.2d 180 (1994). *Rosenblatt* involved circumstances somewhat similar to those in the present case. In *Rosenblatt*, a tenant of commercial property, upon termination of the lease, vacated the property but allegedly left behind "toxic chemicals" which "contaminated" the property. This Court in *Rosenblatt* emphasized that "we have never recognized a trespass where the thing which intrudes actually entered the land during the 'trespasser's' possession and the plaintiff took possession of the land subsequent to the 'intrusion.'" *Rosenblatt*, 335 Md. at 78, 642 A.2d at 189. The *Rosenblatt* opinion next discussed the Restatement and held that § 161 did not apply in that case because it "explicitly provides that a trespass involves the *tortious placing* of something on the land and implicitly provides that the affected land is the land *of another.*" 335 Md. at 78, 642 A.2d at 190. The Court then quoted language from § 158 of the Restatement to "further support[ ] this interpretation." *Ibid.* Specifically, this Court quoted the language stating that " '[o]ne is subject to liability to another for trespass . . . if he intentionally . . . (c) fails to remove from the land a thing which he is under a duty to remove.'" 335 Md. at 78–79, 642 A.2d at 190. The *Rosenblatt* opinion then held that a tenant "owed . . . no duty to remove the contamination." 335 Md. at 79, 642 A.2d at 190.

In distinguishing *Rosenblatt,* the Court of Special Appeals in the case at bar acknowledged that this Court's statement, that "we have never recognized a trespass where the thing which intrudes actually entered the land during the 'trespasser's' possession and the plaintiff took possession of the land subsequent to the intrusion," appeared to support the grant of summary judgment. According to the Court of Special Appeals, however, those words should be read only to "explain[ ] why Section 161 of the Restatement (Second) of Torts was inapplicable" in *Rosenblatt.* The intermediate appellate court in the present case, turning to § 158 of the Restatement, went on to hold that the "no duty" language in *Rosenblatt* should be limited to the situation where the plaintiff was a successor lessee as in *Rosenblatt,* but that in the present case "no 'successor lessee' is involved." Consequently, the Court of Special Appeals could "see no reason why Section 158(c) would not be applicable to Intracel." The appellate court reversed the judgment "as to the trespass count" and affirmed with respect to all other counts.

The defendants filed in this Court a petition for a writ of certiorari, challenging the Court of Special Appeals' reversal on the trespass count. ARE filed a conditional cross-petition for a writ of certiorari, contending that the Court of Special Appeals erred in affirming the dismissal of the negligence count and the dismissal of the claim for punitive damages. ARE also raised a procedural issue in the event that the case was remanded to the Circuit Court for further proceedings. This Court granted the defendants' petition and denied ARE's conditional cross-petition. *Hanna v. ARE,* 396 Md. 9, 912 A.2d 646 (2006). Consequently, as previously indicated, the only issue remaining in the case is whether there exists a cause of action for trespass under the circumstances here.

## II.

The petitioners' argument is that *Rosenblatt v. Exxon, supra,* 335 Md. 58, 642 A.2d 180, is dispositive and mandates a reversal of the Court of Special Appeals' decision on the trespass count. According to the petitioners, *Rosenblatt* held

that "a possessor of land under a lease (Intracel) cannot be ... [held liable for] trespass by a subsequent possessor (ARE) for having left materials behind; the 'intrusion' occurred during the lawful possession of the property by the tenant." (Petitioners' brief in this Court at 12). The respondent, agreeing with the Court of Special Appeals, argues that "*Rosenblatt* does not apply because it deals with a tenant's liability to a subsequent tenant, not its landlord." (Respondent's brief in this Court at 11). The respondent also contends that *Rosenblatt* is distinguishable because it involved materials left in the property's "subsurface" and "subsurface contamination," whereas the present case involved "hazardous materials inside ARE's building." (*Id.* at 13–14).

We agree with the petitioners that *Rosenblatt v. Exxon, supra,* 335 Md. at 78–79, 642 A.2d at 189–190, is dispositive. An examination of this Court's unanimous *Rosenblatt* opinion, authored by former Chief Judge Robert C. Murphy, demonstrates that there is no meaningful distinction between *Rosenblatt* and the case at bar with regard to the trespass claims.

The facts of the *Rosenblatt* case were as follows. Exxon Company, U.S.A., had leased a parcel of property from its owner from 1951 to 1985. Exxon then subleased the property to successive independent operators to use as a gasoline station during that period. Exxon installed gasoline storage tanks on the property, and the tanks remained on the property until the termination of Exxon's lease in 1985. In 1986, the owner leased the same parcel of property to Mr. Rosenblatt who intended to construct and operate a "Grease–N–Go" automotive quick lubrication business. After leasing the property, Rosenblatt requested an environmental assessment of the property which revealed extensive amounts of petroleum remaining on the property. The petroleum had contaminated the property's soil and groundwater. As a result of the contamination, the Maryland Department of the Environment informed Rosenblatt that he could continue with the construction of his "Grease–N–Go" facility but that those efforts would have to be coordinated with Exxon's remediation efforts. Rosenblatt subsequently filed suit against Exxon and the prior

sublessees, seeking economic loss damages including expenses incurred as a result of the contamination. Rosenblatt's complaint included causes of action based on strict liability, negligence, trespass, and nuisance. After some preliminary skirmishes in both the Circuit Court for Prince George's County and the United States District Court for the District of Maryland, the defendants filed in the Circuit Court motions for summary judgment. The Circuit Court granted the motions; Rosenblatt appealed, and this Court issued a writ of certiorari prior to any proceedings in the Court of Special Appeals.

In affirming the judgment in *Rosenblatt,* this Court dealt separately with each of the four asserted causes of action. Chief Judge Murphy for the Court began the discussion of the trespass count as follows (*Rosenblatt,* 335 Md. at 78, 642 A.2d at 189):

### "The Trespass Claim

"When a defendant interferes with a plaintiff's interest in the exclusive possession of the land by entering or causing something to enter the land, a trespass occurs." *See Rockland Bleach & Dye Works Co. v. H.J. Williams Corp., Inc.,* 242 Md. 375, 385, 219 A.2d 48 (1966).

"We have recognized that a trespass occurs when there is interference in the exclusive possession of the land of another, *see Rockland, supra,* but we have never recognized a trespass where the thing which intrudes actually entered the land during the 'trespasser's' possession and the plaintiff took possession of the land subsequent to the 'intrusion.' "

Contrary to the view of the Court of Special Appeals, this controlling principle, that Maryland law does not recognize a trespass cause of action when the "thing which intrudes" enters the land during the alleged "trespasser's" possession, was not set forth as part of a discussion of the Restatement (Second) of Torts. After setting forth the controlling principle, the Court's opinion then turned to the plaintiff Rosenblatt's reliance upon § 161 of the Restatement. The *Rosen-*

*blatt* opinion considered § 161 together with § 158, saying (335 Md. at 78–79, 642 A.2d at 190, emphasis in original):

"Section 161 does not support Rosenblatt's position. It explicitly provides that a trespass involves the *tortious placing* of something on the land and implicitly provides that the affected land is the land *of another.* Section 158 further supports this interpretation. It states that 'one is subject to liability to another for trespass ... if he intentionally enters land *in the possession of the other,* or causes a thing or a third person to do so, or remains on the land, or fails to remove from the land a thing which he is under a duty to remove.' (emphasis added). Exxon did not cause the contamination to occur during Rosenblatt's occupancy; the introduction of the contamination could only have occurred prior to its relinquishing possession of the land. Additionally, Exxon owed Rosenblatt no duty to remove the contamination."

The trespass holding in *Rosenblatt* is directly on point. It cannot be validly distinguished on the grounds relied upon by the Court of Special Appeals and the respondent ARE. The governing principle, that there is no trespass "where the thing which intrudes actually entered the land during" the alleged trespasser's lawful possession, was not set forth as an answer to the plaintiff's reliance on § 161 of the Restatement. The Court thereafter answered the argument based on § 161 by pointing out that, for liability under the section, there must be a *"tortious placing* of something on the land" and the "affected land" must be "the land *of another." Rosenblatt,* 335 Md. at 78, 642 A.2d at 190. Moreover, the *Rosenblatt* opinion simply used § 158 of the Restatement to "further support[ ] this interpretation" of § 161. It treated the sections as somewhat interrelated, rather than wholly separate and distinct as suggested by the Court of Special Appeals.

The *Rosenblatt* holding, that Exxon did not commit a trespass by failing to remove the contaminating petroleum, was not in any manner limited to an action by a successor lessee against the former tenant. The entire portion of the *Rosenblatt* opinion dealing with the trespass count does not even use

the terms "lessee," "successor lessee," or "lessor." Instead, it refers to a party's "occupancy of the land" or "possession" of the land or "subsequent occupier." One of the two cases from other jurisdictions which *Rosenblatt* relied on, *Wellesley Hills Realty v. Mobil Oil Corp.*, 747 F.Supp. 93, 99 (D.Mass.1990), was an action by the current owner of the land. It was not an action by a successor lessee.[3] For other cases where the plaintiff was not a successor lessee, *see, e.g., 55 Motor Avenue Company v. Liberty Industrial Finishing Corp.*, 885 F.Supp. 410, 423–424 (E.D.N.Y.1994) (Trespass action by the landowner against the former occupier of the land which, upon termination of the occupation, left behind materials contaminating the property, and the court, relying upon *Rosenblatt v. Exxon, supra,* held that there is no trespass when the contaminating materials were placed on the property "while the defendants were lawful occupants of the premises"); *Graham Oil Company v. BP Oil Company,* 885 F.Supp. 716, 725–727 (W.D.Pa. 1994) (The landlord brought a trespass action against its former tenant for leaving behind contaminating material at the termination of the lease, and the court held that, because the alleged trespass "occurred during the lease term," the owner "should not be permitted to recover in its action for trespass"); *Hanlin Group, Inc. v. International Minerals & Chemical Corporation,* 759 F.Supp. 925, 937 (D.Maine 1990) (Trespass action by the subsequent owner against the prior owner of the property, and the court held that trespass would not lie because the intruding chemicals were placed on the property during the defendant's lawful occupation); *Taco Cabana, Inc. v. Exxon Corp.*, 5 S.W.3d 773, 780 (Tex.App.1999)

---

**3.** It is noteworthy that, in the portion of the *Rosenblatt* opinion dealing with the negligence count, 335 Md. at 76–78, 642 A.2d at 188–189, the Court does refer to "lessees" and "successor lessees." While the opinion does not specifically draw a distinction between the possible negligence liability of the defendant to the owner, in contrast to the defendant's non-liability to a successor lessee, there is language in the negligence section of *Rosenblatt* which arguably might support such a distinction. We express no opinion as to the merits of such an argument. In the trespass section of the *Rosenblatt* opinion, however, which immediately follows the negligence section, the Court used no language which might support such a distinction.

(Trespass action by the property owner against the former tenant of the prior owner, and the court took the position that a trespass action could not be maintained because the former tenant had no duty under state law to remove the intrusive material at the termination of the lease); *U.P. C., Inc. v. R.O.A. General, Inc.,* 990 P.2d 945, 953–955 (Utah App.1999) (The owner of land brought a trespass action against the former tenant, arguing that, upon termination of the lease, the former tenant should have removed the foundation for a sign, but the court held that there was no trespass because the former tenant had no duty to remove the sign).

Finally, there is no merit in the respondent's attempt to distinguish, for purposes of trespass actions, between chemical materials left in containers on the surface of the property and chemical materials which permeate the soil and groundwater of the property. Neither *Rosenblatt* nor any of the other cases cited above make such a distinction. The language of *Rosenblatt,* 335 Md. at 78, 642 A.2d at 189–190, referring to the "thing which intrudes" and the "placing of something on the land," negates such a distinction. Furthermore, we are aware of no public policy which would support trespass liability when contaminating chemicals are left in containers on the property's surface but would not support trespass liability when contaminating chemicals are left in the soil and contaminate the underground water supply. If a distinction were warranted on public policy grounds, it would be opposite to the one urged by the respondent.[4]

---

4. Both the Court of Special Appeals and the respondent cited this Court's decision in *Metromedia v. WCBM Maryland,* 327 Md. 514, 610 A.2d 791 (1992), in support of their position that the petitioners' action in leaving materials on the premises constituted a trespass. This reliance on *Metromedia* is misplaced. *Metromedia* was not a trespass action, and it did not involve a tenant's leaving materials on the premises when the tenant vacated the premises. *Metromedia* was an ejectment action by an out-of-possession sub-sublessor against the corporate sub-sublessee and its chief executive officer, both of whom had refused to vacate the premises after the termination of the sub-sublease. The plaintiff sought possession of the property and damages. The parties to the appellate proceedings in this Court were the sub-sublessor and the chief executive officer; the sub-sublessee was not a party in this

■ This Court's decision in *Rosenblatt v. Exxon* makes it clear that, when materials are left on real property at the conclusion of the defendant's lawful possession of the property, there is no cause of action in trespass if the materials entered the land before or during the defendant's lawful possession. The Circuit Court correctly applied this principle when it granted the defendants' motion for summary judgment on the trespass count.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS ON THE TRESPASS COUNT REVERSED. JUDGMENT OF THE COURT OF SPECIAL APPEALS OTHERWISE AFFIRMED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT ARE ACQUISITIONS, LLC.*

Court. The contested issue in this Court was whether the chief executive officer could be held personally liable for the actions of the corporation. There was no issue concerning the scope or nature of an action of trespass *quare clausum fregit.* For a discussion of the differences between trespass *quare clausum fregit* and ejectment, *see* I John Prentiss Poe, *Pleading and Practice in Courts of Common Law,* §§ 242–250, 256–275 (3d ed. 1897).